Compensation Appeals Board
No. 93-862

APPEAL OF DONNA L. HURST

(New Hampshire Department of Labor Compensation Appeals Board)

July 6, 1995

*Engel, Gearreald & Gardner, P.A.,* of Exeter (*Mark S. Gearreald* on the brief and orally), for the petitioner.

*Roussos, Hage & Hodes, P.A.,* of Manchester (*Edward F. Patch* and *John B. FitzGerald, III* on the brief, and *Mr. Patch* orally), for Arthur's Market.

*Jeffrey R. Howard,* attorney general (*Mark P. Hodgdon,* assistant attorney general, on the brief), for the State, as *amicus curiae.*

*McLane, Graf, Raulerson & Middleton, P.A.,* of Portsmouth (*J. Kirk Trombley* and *Kevin M. Leach* on the brief), for the New Hampshire Trial Lawyers Association, as *amicus curiae.*

JOHNSON, J. The petitioner, Donna L. Hurst, appeals a decision by a panel of the New Hampshire Department of Labor Compensation Appeals Board (the panel) denying her claim for workers' compensation benefits. We reverse and remand.

The petitioner was employed as a meat cutter for Arthur's Market when she injured herself. Arthur's Market maintained that the petitioner's condition bore no causal relation to her employment and refused to provide benefits. The petitioner's case was heard by a hearings officer, who ruled in favor of Arthur's Market. The petitioner appealed to the compensation appeals board.

Before the board hearing began, the petitioner filed a motion requesting the disqualification of any panel members who were "represented in the adjusting of cases by counsel hired to represent the employer in this matter." Nicholas Georges, an adjuster for the

New Hampshire Auto Dealers Association, was a member of the panel. The following colloquy ensued:

[Chairperson]: Mr. Georges, what is your relationship to Attorney Fitzgerald [counsel for Arthur's Market, the employer of Donna Hurst]?

Mr. Georges: They do, or perform defense work for my company at various times.

. . . .

[Chairperson]: I believe the standard required of this panel is actual bias not appearance of impropriety and I'm inclined to continue the prior practice.

The petitioner's motion was denied. The panel held a hearing and concluded that the petitioner had failed to prove that her injury was work-related or that it was an occupational disease. The petitioner filed a motion for a rehearing, which was denied.

On appeal she argues: (1) that the panel chairperson should have disallowed Georges' participation in her case; (2) that the panel erred in finding that she did not sufficiently establish legal and medical causation; and (3) that the panel erred in holding that she did not have an occupational disease.

Because we remand for a new hearing, we need only address the first issue. We base our decision on RSA 281-A:42-a, I (Supp. 1993) (amended 1993), which requires that "[n]o person who is an interested party or an employee of an interested party shall participate as a member of [a compensation appeals board panel]."

The panel chairperson found that the statutory requirement that panel members have at least five years experience in the area of workers' compensation creates an "inevitable" situation where panel members often "know or have previously been in a professional relationship with persons presenting matters to a Board Panel." *See* RSA 281-A:42-a, I. He therefore concluded that "the standard applied to qualify a juror was not the appropriate standard with which to test a Board member's qualification to sit with a panel," and denied the petitioner's motion to disqualify Georges.

"We do not overturn agency decisions or orders, absent an error of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." *Appeal of Stetson,* 138 N.H. 293, 295, 639 A.2d 245, 247 (1994) (quotation omitted); RSA 541:13 (1974).

The petitioner argues that Georges' presence on the panel created an appearance of impropriety in violation of her right to a fair and impartial hearing under the State and Federal Constitutions. Arthur's

Market argues that the standard for disqualification is actual bias, which can be established only by proving that the panel member has a direct interest, either personal or pecuniary, in the outcome of the case.

■ An administrative official acting in a quasi-judicial capacity must be disqualified if he or she "is an interested party or an employee of an interested party." RSA 281-A:42-a, I. An official is an "interested party" if he or she cannot satisfy two requirements. First, the official must not have a direct personal or pecuniary interest that is immediate, definite, and capable of demonstration. *State ex rel. Thomson v. State Bd. of Parole,* 115 N.H. 414, 422, 342 A.2d 634, 639 (1975). Second, the official must not have any "conne[ct]ion with the parties in interest, as would be likely, improperly, to influence [his or her] judgment." *N.H. Milk Dealers' Ass'n,* 107 N.H. 335, 338, 222 A.2d 194, 198 (1966) (quotation omitted); *see Totty v. Grantham Planning Board,* 120 N.H. 388, 390, 415 A.2d 687, 688 (1980). Whether a direct interest or a connection requires disqualification depends upon the particular circumstances of the case. *N.H. Milk Dealers' Ass'n,* 107 N.H. at 339, 222 A.2d at 198.

■ The petitioner contends that Georges had a business connection to Arthur's Market's counsel that would be likely to affect his judgment. We hold that the current and ongoing relationship between Georges and the attorney was such that it "would be likely" to influence his opinion and thus necessitated his removal from the panel. *See id.* at 338, 222 A.2d at 198.

We note that in recent years certain quasi-judicial administrative boards have been accorded the final fact-finding voice in determining important rights between litigants, subject only to this court's review for conclusions "affected by an error of law or clearly erroneous." *Appeal of Swift,* 134 N.H. 177, 179, 589 A.2d 590, 592 (1991); *see* RSA 282-A:67, V (Supp. 1994); RSA 281-A:43, I(c) (Supp. 1994). The members of these administrative bodies are paid reasonably on a daily basis for their services, unlike various town and city planning boards and zoning boards of adjustment. *See, e.g.,* RSA 282-A:62, I (Supp. 1994); RSA 281-A:42-a, III. In the past, appeals from these administrative agencies were made in the first instance to the superior court, which would conduct a *de novo* review. *See, e.g.,* RSA 282:5(G) (1977) (repealed 1981); RSA 281:37, I (1977) (repealed 1988).

We need not base our decision in this case on constitutional grounds. We conclude, however, that a board, such as the one in this case, should carefully consider the words of this court in *New Hampshire Milk Dealers' Association,* 107 N.H. 335, 222 A.2d 194, in which we said:

Since 1784, Article 35th, Part I of our Constitution has provided that "It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." We subscribe to what was said in that respect by this court as far back as 1851 that it is an obvious principle of justice that all persons who are to act as judges, should be impartial, without any interest of their own in the matter in controversy, and without any such conne[ct]ion with the parties in interest, as would be likely, improperly, to influence their judgment. There is no doubt that these principles apply to the members of [an administrative board] acting in a quasi-judicial capacity . . . .

*Id.* at 338-39, 222 A.2d at 197-98 (quotation omitted).

*Reversed and remanded.*

All concurred.