Compensation Appeals Board
No. 98-649

## APPEAL OF WAL-MART STORES

### (New Hampshire Compensation Appeals Board)

December 28, 2000

*Devine, Millimet & Branch, P.A.*, of Manchester (*Nelson A. Raust* and *Paul R. Kfoury, Jr.* on the brief, and *Mr. Raust* orally), for the petitioner.

*Salomon, Randlett & Bernard,* of Hampton (*H. Nina Bernard* on the brief and orally), for the respondent.

BRODERICK, J. The petitioner, Wal-Mart Stores (Wal-Mart), appeals the compensation appeals board's (board) decision to grant the respondent, David Hargreaves, a twenty-eight percent permanent impairment award. We vacate and remand.

While employed by Wal-Mart, the respondent injured his left shoulder lifting and separating snow blowers. Wal-Mart's insurance carrier, American International Group (AIG), accepted the respondent's claim, but disputed the extent of his permanent impairment. The neurosurgeon who operated on the respondent determined that he suffered a twenty-eight percent permanent impairment. An independent physician retained by the insurance carrier calculated his impairment at fifteen percent.

A department of labor (DOL) hearing officer awarded the respondent the lesser permanent impairment. He appealed to the board, which held a *de novo* hearing on March 13, 1997. On October 10, 1997, the board, through its chairperson, Attorney Johnstone, issued a decision in favor of the respondent. Wal-Mart's motion for rehearing was denied on September 16, 1998.

On April 14, 1997, one month after the *de novo* hearing, but several months before the board issued its decision, Johnstone notified AIG that he was representing an injured worker in a workers' compensation case against Wal-Mart. He did not disclose his representation to Wal-Mart or the respondent prior to the board's October 10, 1997, decision.

On appeal, Wal-Mart argues that: (1) Johnstone had a conflict of interest as a result of taking a case against Wal-Mart before the board issued its decision; (2) the board erroneously disregarded the permanent impairment evaluation of the independent physician; and (3) the board erroneously accepted a permanent impairment evaluation which deviated from the AMERICAN MEDICAL ASSOCIATION GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (4th ed. 1993) (AMA GUIDES). Because we find that Johnstone had a conflict of interest in this case, we vacate the board's decision and remand for a new hearing.

I

"We do not overturn agency decisions or orders, absent an error of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." *Appeal of Hurst*, 139 N.H. 702, 703, 660 A.2d 1143, 1144 (1995) (quotation omitted).

RSA 281-A:42-a, I (1999) provides that "[n]o person who is an interested party or an employee of an interested party shall

participate as a member of the [compensation appeals board] panel. The board shall conduct its proceedings in such a manner as to ensure a fair and impartial hearing." An official is an "interested party" if he or she (1) has "a direct personal or pecuniary interest that is immediate, definite, and capable of demonstration," or (2) has "any connection with the parties in interest, as would be likely, improperly, to influence his or her judgment." *Hurst*, 139 N.H. at 704, 660 A.2d at 1144-45 (quotation and brackets omitted). "Whether a direct interest or a connection requires disqualification depends upon the particular circumstances of the case." *Id.* at 704, 660 A.2d at 1145.

▮ It is axiomatic that a quasi-judicial official cannot both prosecute a case against an interested party and adjudicate that party's rights without casting doubt on his or her impartiality. In addition, when attorneys act in quasi-judicial roles, they have a duty to disclose actual or potential conflicts and to conduct their legal practices in such a way as to shield their deliberative functions from the taint of impropriety, in fact or in appearance. *See Appeal of City of Keene*, 141 N.H. 797, 801, 693 A.2d 412, 415 (1997).

▮ The record shows that Johnstone, after hearing Wal-Mart's appeal, but several months before issuing a decision, took up the representation of an injured worker against Wal-Mart. While Johnstone may have deliberated and voted with probity, it cannot be said objectively that his representation against Wal-Mart did not create a conflict of interest. We hold that Johnstone's representation against Wal-Mart was such that it "would be likely to influence his opinion and thus necessitated his removal from the panel." *Hurst*, 139 N.H. at 704, 660 A.2d at 1145 (quotation omitted) (finding relationship between board member and defendant's attorney, who "perform[ed] defense work for [board member's] company at various times," to be likely to influence board member's opinion). Therefore, under RSA 281-A:42-a, I, Johnstone was an interested party who should not have participated in the board's decision. *See id.*

## II

We address Wal-Mart's remaining arguments because they raise issues likely to recur in connection with a new hearing. First, Wal-Mart argues that the board erred when it determined that RSA 281-A:38, II (1999), as amended prior to the board's hearing, precluded it from considering the independent physician's evaluation of the respondent.

When Wal-Mart's independent physician conducted his evaluation on February 9, 1996, RSA 281-A:38, II (Supp. 1995) provided that "[a]ny health care provider conducting independent medical examinations under this chapter [must] be certified by the appropriate specialty board in [his] area of specialty." There is no dispute that he was so certified. Therefore, he was statutorily qualified to conduct the evaluation. Effective August 9, 1996, however, the law was amended to state that "[a]ny health care provider conducting independent medical evaluations . . . [must] be certified by the appropriate specialty board as recognized by the American Board of Medical Specialties." RSA 281-A:38, II (1999). According to the record, the independent physician would not have qualified under this amendment.

"When the legislature is silent as to whether a statute should apply prospectively or retrospectively, [as is the case here,] our interpretation turns on whether the statute affects the parties' substantive or procedural rights." *State v. Hamel*, 138 N.H. 392, 394, 643 A.2d 953, 955 (1994). Where the rights affected by the statute are substantive, there is a presumption of prospectivity. *See Eldridge v. Eldridge*, 136 N.H. 611, 615, 620 A.2d 1031, 1032 (1993). "Where the statute is remedial or procedural in nature, however, the presumption is reversed, and the statute is usually deemed to apply retroactively to those pending cases which on the effective date of the statute have not yet gone beyond the procedural stage to which the statute pertains." *Workplace Systems v. Cigna Prop. & Cas. Ins. Co.*, 143 N.H. 322, 324, 723 A.2d 583, 584 (1999) (quotation omitted). "In the final [analysis], [however,] the question of retrospective application rest on a determination of fundamental fairness, because the underlying purpose of all legislation is to promote justice." *Eldridge*, 136 N.H. at 613, 620 A.2d at 1032.

RSA 281-A:38, II, as amended, affects only the procedural rights of Wal-Mart because it alters the credentials an expert must possess to conduct an independent medical examination if it is to be considered by the DOL. If the statute were applied retrospectively, however, Wal-Mart's independent physician would not be allowed to testify before the board. Under the circumstances of this case, where the rules governing medical examinations changed in the middle of a two-tiered hearing scheme, and where one party would be substantially prejudiced, a retrospective application would violate fundamental fairness. *See Eldridge*, 136 N.H. at 613, 620 A.2d at 1032. Therefore, the board erred by basing its rejection of the independent physician's evaluation on RSA 281-A:38, II as amended.

## III

We reject Wal-Mart's argument that the twenty-eight percent permanent impairment evaluation accepted by the board deviated from the applicable AMA GUIDES and, therefore, should have been rejected. RSA 281-A:32 (1999) controls the determination of permanent impairment awards. Paragraph IX of that section identifies the AMA GUIDES to be used in making evaluations for such awards. In this case, the respondent's neurosurgeon used the range of motion model to determine permanent impairment. The AMA GUIDES, however, require that the injury model be used whenever possible to assess permanent impairment. *See* AMA GUIDES §§ 3.3i at 108, 3.3j at 112 (4th ed. 1993). The neurosurgeon, however, determined that the preferred model did not apply to the respondent's injury, and, as allowed by the AMA GUIDES, he employed the range of motion model. While his initial evaluation did not contain an explicit explanation for his deviation from the preferred model, his subsequent letter, coupled with his initial report, "provide[d] a full medical evaluation, analysis of . . . medical findings with respect to the [respondent's] life activities, and comparison of the results of analysis with the impairment criteria." *Appeal of Rainville*, 143 N.H. 624, 632, 732 A.2d 406, 413 (1999).

■ "The AMA GUIDES expressly allows a physician to deviate from the guidelines if the physician finds it necessary to produce an impairment rating more accurate than the recommended formula can achieve." *Id.* at 631-32, 732 A.2d at 412. In this case, there is record evidence to show that deviation from the guidelines was necessary to evaluate accurately the impairment suffered by the respondent.

*Vacated and remanded.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.