Gary S. v. Manchester School Dist.    CV-02-004-B   1/16/03   P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Gary and Sylvie S., individually**
**and on behalf of their son,**
**Andrew S.**

**v.**

**Manchester School District**

Civil No. 02-004-B
Opinion No. 2003 DNH 010 P


**MEMORANDUM AND ORDER**


Andrew S. is a disabled child who attends a Catholic elementary school but receives special education services from the Manchester School District pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. (2000 & Supp. 2001) and New Hampshire's Special Education Law, N.H. Rev. Stat. Ann. 186-C. Andrew's parents sought a hearing before the New Hampshire Department of Education after becoming dissatisfied with the services Andrew was receiving. A hearing officer denied their request because he determined that neither the IDEA nor the Special Education Law entitle the parents of a

disabled child to a hearing unless their child is enrolled in public school.

Andrew's parents accept the hearing officer's interpretation of the IDEA. Nevertheless, they argue that the Act: (1) impermissibly burdens their right to send Andrew to private school in violation of the Fourteenth Amendment's Due Process and Equal Protection Clauses; (2) denies them a suitable forum in which to litigate their dispute in violation of their Fourteenth Amendment right to procedural due process; and (3) penalizes them for their decision to send their child to a religious school in violation of the First Amendment's Free Exercise Clause and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. 2000bb et seq. (1994 & Supp. 2002). They also argue that they are entitled to a hearing under the Special Education Law even if their challenges to the IDEA are unavailing.

The matter is before me on cross-motions for summary judgment. I address the parties' arguments by first describing the differences in the way in which federal and state law treat disabled children who attend public and private school. I then briefly describe the facts of the case and analyze each claim in turn.

-2-

# I.

## A. The IDEA

The IDEA is a federal grant program under which a state's eligibility to receive funds is conditioned upon its adoption of laws and regulations that make a "free appropriate public education" available to the state's disabled children. 20 U.S.C. § 1412(a)(1). The Act defines a "free appropriate public education" as "special education and related services that - (A) have been provided at public expense, under public supervision and direction and without charge; (b) meet the standards of the State educational agency; (c) include an appropriate preschool, elementary or secondary school education in the State involved; and (d) are provided in conformity with the individualized education program required under Section 1414(d) of this title." 20 U.S.C. § 1401(8). "Special Education" is "specially designed instruction" designed to "meet the unique needs of the child," 20 U.S.C. § 1401(25), and "related services" includes transportation and other supportive services that may be required to assist the child in deriving benefit from special education services. 20 U.S.C. § 1401(22).

The parents of a disabled student are entitled to an "impartial due process hearing" to challenge a local school district's compliance with the IDEA's free appropriate public education requirement. See 20 U.S.C. § 1415(f); 34 C.F.R. § 300.507. The right to a due process hearing includes the rights to (1) have an attorney attend the hearing; (2) present evidence and cross-examine witnesses; (3) require the local school district to disclose expert evaluations; (4) require the state to produce a written or electronic verbatim record of the hearing; and (5) require the hearing officer to produce a written or electronic decision that includes findings of fact. See 20 U.S.C. § 1415(f)(2), (h).

Until Congress enacted the Individuals with Disabilities Education Act Amendments of 1997 ("the 1997 Amendments"), Pub L. No. 105-17 (1997), the law was unclear as to whether a participating state's statutory duty to make a free appropriate public education available to its disabled students entitled disabled students voluntarily placed in private school to an individually enforceable right to receive services.[1] Before the

_____

[1] A disabled child who has been placed in a private school by a local school district has the same substantive and procedural rights under the IDEA as a disabled child who has been enrolled by his parents in public school. See 20 U.S.C. §

-4-

IDEA was amended, it provided only that participating states must assure that, "[t]o the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools, provision is made for the participation of such children in the program assisted or carried out under this subchapter by providing for such children special education and related services . . . " 20 U.S.C. § 1413(a)(4)(A)(1996). Some courts construed this provision to give disabled students in private school an individually enforceable right to comparable benefits. See, e.g., Peter v. Wedl, 155 F.3d 992, 1000-01 (8th Cir. 1998). Other courts held that the IDEA did not require a local school district to provide comparable benefits if the agency had offered the student a free appropriate education in a public school setting. See, e.g., K.R. v. Anderson Cmty. Sch. Corp., 81 F.3d 673, 680 (7th Cir. 1996), vacated and remanded for reconsideration in light of 1997 Amendments to IDEA, 521 U.S. 1114 (1997), and on remand, 125 F.3d 1017 (7th Cir. 1997) (reaffirming prior decision).

---

1412(a)(10)(B)(i); 34 C.F.R. §§ 300.400-300.402. When I refer to disabled children in private school in this Memorandum and Order, I mean only children who have been voluntarily enrolled in private school by their parents.

The 1997 Amendments resolved uncertainty surrounding the issue by adding language stating that the IDEA

> does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.

20 U.S.C. 1412(a)(10)(C)(i). In light of this provision, it is now beyond reasonable dispute that a disabled child who has been placed by his parents in a private school does not have an individually enforceable right to receive special education and related services. See K.R., 125 F.3d at 1019. Instead, a local school district need only spend a proportional amount of its total IDEA funding on the provision of services to disabled students in private school. See 20 U.S.C. § 1412(a)(10)(A)(i); 34 C.F.R. § 300.453(a).

Because a disabled student in private school does not have an individually enforceable right to receive special education and related services, the IDEA does not give the child's parents a corresponding right to an impartial due process hearing.[2] See

_____

[2] A disabled student in private school has a right to an impartial due process hearing to challenge a local school district's failure to properly identify, locate, or evaluate the

-6-

34 C.F.R. § 300.457(a). Instead, states must adopt "state complaint" procedures for resolving complaints brought by the parents of disabled children in private school. See 34 C.F.R. §§ 300.457(c), 300.660. When a parent invokes the state complaint process, the state must: (1) conduct an on-site investigation; (2) give the parent an opportunity to submit additional evidence; (3) review all relevant information; and (4) issue a written decision with findings of fact. See 34 C.F.R. § 300.661. If the state determines that a complaint has merit, it must determine "[h]ow to remediate the denial of those services, including, as appropriate, the awarding of money reimbursement or other corrective action appropriate to the needs of the child." 34 C.F.R. § 300.660(b)(1). A parent may appeal an adverse ruling on a complaint to the New Hampshire Supreme Court. See N.H. Code Admin. R. Ann. Ed. 1127.04(C) (2001) ("[a]ny party who is aggrieved by the final written decision of the commissioner [resolving a state complaint] may appeal in accordance with Ed. 200"); Ed. 214.01 ("[a]ll appeals of the state board action shall be in accordance with RSA 541"); N.H. Rev. Stat. Ann. 541:6 (1997

_____

student. See 34 C.F.R. § 300.457(b). This entitlement is not at issue here.

& Supp. 2002) ("applicant may appeal by petition to the Supreme Court").

**B.   New Hampshire Law**

New Hampshire implements the IDEA through its Special Education Law.  N.H. Rev. Stat. Ann. § 186-C.  The Law requires local school districts to develop an individualized education plan ("IEP")[3] for every disabled student residing in the district.  See N.H. Rev. Stat. Ann. § 186-C:7.  It also provides that every disabled student "shall be entitled to attend an approved program which can implement the child's individualized education plan."  N.H. Rev. Stat. Ann. § 186-C:9.  An "approved program: is "a program of special education that has been approved by the state board of education and that is monitored by a school district . . . for the benefit of educationally disabled

---

[3]  An IEP is identified in the Special Education Law as "a written plan for the education of an educationally disabled child that has been developed by a school district in accordance with rules adopted by the state board of education and that provides necessary special education or special education and educationally related services within an approved program."  N.H. Rev. Stat. Ann. § 186-C:2-III.  The IDEA adopts a somewhat different definition of an IEP.  See 20 U.S.C. §§ 1401(12); 1436. Moreover, the IDEA does not require a participating state to provide a disabled student in a private school with an IEP.  See 34 C.F.R. § 300.341(a)(1).  Instead, local educational agencies are required to prepare a less comprehensive "services plan" for such students.  See 34 C.F.R. § 300.452(b).

children . . . ." N.H. Rev. Stat. Ann. § 186-C:2-II. The parents of a disabled student are entitled "to appeal decisions of the school district regarding such child's individualized education plan as provided in rules adopted in accordance with RSA 541-A by the state board of education." N.H. Rev. Stat. Ann. § 186-C:7 II. It also states that "[a]ny action against a local school district seeking to enforce special education rights under state or federal law shall be commenced by requesting an administrative due process hearing . . . ." N.H. Rev. Stat. Ann. § 186-C:16-b-I. The law does not explicitly distinguish between disabled students in private school and disabled students in public school.

The New Hampshire Department of Education has adopted by reference the federal regulations that pertain to the provision of special education services to disabled students in private school. See Ed. 1117.03. The state regulations thus make clear that disabled students in private schools and their parents (i) have no individually enforceable right under state law to receive services, (ii) are entitled only to an IEP that is consistent with what the IDEA characterizes as a "services plan;" and (iii) must use the state complaint process rather than the due process

hearing process to raise any complaint concerning the adequacy of services.  See id.  These regulations became effective on July 1, 2001.

Prior to July 1, 2001, the Law's implementing regulations were less clear concerning the rights of disabled children in private school.  They required local school districts to spend "the same average amount of IDEA program funds" for disabled students in public and private school unless "the average cost of meeting the needs of [disabled students in private school] is different from the average cost of meeting the needs of students enrolled in public schools," in which case, the district was required to spend "a different average amount of program benefits for private school students."  Ed. 1117.04 (1996).  The regulations also required local school districts to offer private school students benefits that were comparable in "quality, scope and opportunity for participation."  Ed. 1117.03 (1996).

The regulations authorized the parents of disabled children to file complaints with the Department concerning violations of either the IDEA or the Special Education Law and required the Department to investigate such complaints, issue written decisions, and take corrective action if warranted.  See Ed.

-10-

1127.001-1127.02 (1996). The regulations also established procedures for "Administrative Due Process Hearings" which authorized a parent of a disabled child to initiate a hearing to challenge "the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child." Ed. 1128.03(a)(1),(b)(1996). Finally, the regulations stated that "[t]he right of the parent to . . . invoke due process procedures if the parent feels that [good faith efforts to assist the student in achieving the objectives and goals listed in the individualized education program] are not being made shall not be limited." Ed. 1109.10(c)(1996).

## II.

Each year since 1997, Andrew's parents have met with a team of educators from the District to develop an IEP for Andrew for the upcoming school year. Andrew's IEPs for the 1999-2000 and 2000-01 school years specified that the District would provide him with one hour per week of speech and language services for the entire school year at a local public elementary school. The District also agreed to transport Andrew from and to his Catholic

school so that he could receive the required services. Notwithstanding the District's agreements, Andrew did not receive any services in either year until October. Further, because the District failed to provide Andrew with reliable transportation, he missed an additional 10 sessions and part of 5 others during the 2000-01 school year.

To make up for the missed sessions, Andrew's parents attempted to secure the District's agreement to include compensatory education[4] in his IEP for the 2001-02 school year. On June 19, 2001, after the District refused this request and the parties were unable to agree on other aspects of the proposed IEP, Andrew's parents filed a complaint with the New Hampshire Department of Education and requested an impartial due process hearing. The District responded with a motion to dismiss arguing that because Andrew's parents had voluntarily enrolled him in private school, neither the IDEA nor the Special Education Law entitled them to a due process hearing. On September 7, 2001, the hearing officer assigned to the case agreed and granted the District's motion.

---

[4] Compensatory education is relief awarded under the IDEA to remedy past violations. See Phil v. Massachusetts Dept. of Educ., 9 F.3d 184, 188 (1st Cir. 1993).

Andrew's parents filed a state complaint with the New Hampshire Department of Education on October 17, 2001. While the state complaint was pending, they commenced this action challenging the hearing officer's denial of their request for a due process hearing. The Department of Education ultimately dismissed the state complaint on March 21, 2002. Andrew's parents elected to proceed with this action rather than seek judicial review of the denial of their state complaint in the New Hampshire Supreme Court.

## III.

Andrew's parents present several arguments to support their claim that the IDEA's private school provisions are either are unconstitutional or violate RFRA. They also assert that they are entitled to a due process hearing under the Special Education Law. I begin by addressing their challenges to the IDEA.[5]

---

[5] The IDEA does not require states to deny a due process hearing to the parents of disabled children in private school. It merely permits states to do so without jeopardizing their ability to receive federal funds. The hearing officer's decision to deny Andrew's parents a hearing thus is necessarily based on New Hampshire's Special Education Law rather than the IDEA. Accordingly, the District might well have argued that Andrew's parents' challenges to the IDEA are unavailing because state law rather than federal law denies them a right to a hearing. I

## A. The IDEA

### 1. Substantive Due Process

In <u>Pierce v. Society of Sisters</u>, 268 U.S. 510, 534-35 (1928), the United States Supreme Court invalidated a state law that required parents to send their children to public school. The Court reasoned that the law violated a parent's right under the Fourteenth Amendment's Due Process Clause to control her child's upbringing and education. <u>See</u> <u>id.</u> Andrew's parents rely on <u>Pierce</u> in arguing that the IDEA improperly conditions their ability to obtain a due process hearing on their agreement to surrender their fundamental right to enroll Andrew in private school. Because Andrew's parents do not base their substantive due process claim on the assumption that either state or federal law gives parents an entitlement to government funding for their children's education, I understand them to assert an "unconstitutional condition" claim. Such claims are generally

---

decline to dispose of plaintiffs' IDEA claims on this basis for two reasons. First, the District does not make this argument. Second, Andrew's parents would have redirected their constitutional challenges to the Special Education Law if I had denied them the opportunity to assert them with respect to the IDEA. Thus, I would have had to address the merits of their constitutional claims in an almost identical context even if I had declined to address their challenges to the IDEA.

made when government attempts to condition access to a government benefit on the relinquishment of a constitutional right.

The law of unconstitutional conditions is anything but clear. In certain contexts, the Supreme Court has condemned government attempts to condition the provision of a government benefit on a recipient's agreement to relinquish a constitutional right. See, e.g., Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 549 (2001) (federal funds for provision of legal services cannot be conditioned upon relinquishment of right to represent litigants in challenges to welfare laws); Nollan v. California Coastal Comm'n, 483 U.S. 825, 837 (1987) (building permit cannot be conditioned upon relinquishment of unrelated property right); FCC v. League of Women Voters of California, 468 U.S. 364, 402 (1984) (federal funds for non-commercial broadcasting stations cannot be conditioned on relinquishment of right to editorialize). On other occasions, for reasons that are difficult to discern given the above-cited precedents, the Court has declined to use the doctrine to invalidate selective subsidies that burden other constitutional rights. See South Dakota v. Dole, 483 U.S. 203, 209-210 (1987) (federal funds may be conditioned on state's adoption of 21 year-old drinking age);

<u>Rust v. Sullivan</u>, 500 U.S. 173, 196 (1991) (federal funds for family planning service providers may be conditioned on relinquishment of right to engage in abortion counseling). This lack of clarity has sparked a rich body of academic writing that attempts to bring coherence to this difficult area of law.[6] I need not wade into this doctrinal quagmire to resolve this case, however, because both the Supreme Court and the First Circuit have consistently refused to invalidate laws which condition a parent's ability to obtain educational benefits on the parent's relinquishment of her right to send her child to private school. See <u>Norwood v. Harrison</u>, 413 U.S. 455, 462 (1973) (<u>Pierce</u> "said nothing of any supposed right of private or parochial schools to share with public schools in state largesse on an equal basis or otherwise."); <u>Strout v. Albanese</u>, 178 F.3d 57, 66 (1st Cir. 1999) ("fundamental right [to direct a child's upbringing and education] does not require the state to directly pay for a

_____

    [6] <u>See, e.g.</u>, Mitchell N. Berman, <u>Conversion Without Baselines: Unconstitutional Conditions in Three Dimensions</u>, 90 Geo. L. Rev. 1 (2001); Lynn A. Baker, <u>The Prices of Rights: Toward a Positive Theory of Unconstitutional Conditions</u>, 75 Cornell L. Rev. 1185, 1186 (1990); Cass R. Sustein, <u>Why the Unconstitutional Conditions Doctrine is an Anochronism (With Particular Reference to Religion, Speech and Abortion)</u>, 70 BU L. Rev. 593 (1990); Kathleen M. Sullivan, <u>Unconstitutional Conditions</u>, 102 Harv. L. Rev. 1413 (1989).

sectarian education").  See also Harris v. McCrae, 448 U.S. 297,

318 (1980) (dictum) ("It cannot be that because government may

not . . . prevent parents from sending their child to a private

school . . . government, therefore, has an affirmative

constitutional obligation to ensure that all persons have the

financial resources to . . . send their children to private

schools."); Maher v. Roe, 432 U.S. 464, 477 (1977) (dictum)

("Pierce casts no shadow over a state's power to favor public

education by funding it . . .").

Several factors lead me to conclude that this case fits

comfortably within the above-cited precedents.  First, while a

different result might well be required if the evidence had

indicated that Congress enacted the IDEA's private school

provisions in an effort to penalize private school students, I

find no support in the language, structure, or function of the

IDEA for drawing such an inference.  The IDEA does not

categorically deny funding to parents who choose to enroll their

children in private school.  To the contrary, it requires local

educational agencies to spend a proportional amount of their

total IDEA funds on the provision of services to disabled

students in private school.  Rather than suggesting improper

animus toward private school students, the IDEA's private school provisions more likely reflect the rational judgment that local school districts require significant flexibility in determining how to manage the limited funds that the federal government is willing to make available for the education of disabled children in private school. The specific provision that Andrew's parents challenge — the limitation on their right to a due process hearing — follows logically from the congressional determination that private school students do not have an individually enforceable right to obtain services. Since Andrew's parents have offered no countervailing evidence on this point, I decline to read into the IDEA a bias against private school students that does not appear to exist.

Second, the private school provisions do not significantly threaten a parent's right to control her child's education. The IDEA requires local school districts to spend a proportional amount of their IDEA funds on the education of disabled children in private school and it provides the parents of such children with a meaningful opportunity to challenge a local school district's actions by filing a state complaint. It is unlikely under such circumstances that many parents who would otherwise

-18-

choose to enroll their children in private school would feel compelled to forgo that right merely because they would otherwise lose an individually enforceable right to services and the right to a due process hearing. Thus, the IDEA's private school provisions are not improperly coercive because they do not place undue pressure on a parent's right to send her child to private school.

Finally, it is significant that the condition imposed by the IDEA's private school provisions — relinquishment of the right to educate a child in private school — is closely related to the benefit at stake — an individually enforceable right to receive special education services and the ability to obtain a hearing challenging the adequacy of those services. If Congress had attempted to condition access to an educational subsidy on the relinquishment of an unrelated constitutional right, say the recipient's Fourth Amendment right to be free from unreasonable searches and seizures, I might well view the matter differently. Such a condition would likely be impermissible because it bears no relationship to the benefit at issue. This is not the case here. Accordingly, I am unpersuaded by Andrew's parents' substantive due process claim.

-19-

## 2. Equal Protection Clause

Andrew's parents also rely on <u>Pierce</u> as the foundation for their Equal Protection Claim. Their argument is that: (1) <u>Pierce</u> recognizes that parents have a fundamental right to educate their children in private schools; (2) infringements on fundamental rights must be justified by a compelling state interest; (3) the IDEA infringes the fundamental right of parents to place their children in private school by permitting states to deny them benefits that are available to the parents of children who attend public school; and (4) the infringement is not permissible because it does not serve a compelling state interest.

This argument fails because it erroneously assumes that government infringes a fundamental right when it refuses to subsidize that right. The Supreme Court rejected this assumption in <u>Ryan v. Taxation with Representation of Washington</u>,461 U.S. 540, 549 (1997), when it held that "a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right and thus is not subject to strict scrutiny." To hold otherwise here would permit Andrew's parents to revive their moribund substantive due process claim by recharacterizing it as an equal protection challenge. This is not something that

the Supreme Court precedent permits.  See Norwood, 413 U.S. at 462 ("It has never been held that if private schools are not given some share of public funds allocated for education that such schools are isolated into a classification violative of the Equal Protection Clause.").  Accordingly, I reject plaintiffs' equal protection claim.

### 3.  Procedural Due Process

Andrew's parents argue that the IDEA violates their right to procedural due process because it does not require the Department of Education to give them a hearing on their challenge to the adequacy of Andrew's benefits.  The short answer to this argument is that the due process clause does not entitle them to a hearing because the IDEA does not give them a protectable property interest in the services that Andrew is receiving from the District.  As I have already noted, the IDEA does not give Andrew an individually enforceable right to receive special education services.  The fact that the District must spend a proportional share of its IDEA funding on the education of disabled students in private school gives him nothing more than a "mere expectation" that he will receive benefits.  This is not sufficient to trigger an entitlement to a hearing when his

benefits are threatened.[7]  See O'Bannon v. Town Court Nursery Center, 447 U.S. 773, 785 (1980); Hoffman v. City of Warwick, 909 F.2d 608, 619-21 (1st Cir. 1990).

### 4. Free Exercise

Andrew's parents next claim that the IDEA violates their rights under the First Amendment's Free Exercise Clause.

Before 1990, any law that substantially burdened religiously motivated conduct was deemed to violate the First Amendment's Free Exercise Clause unless the law served a compelling state interest.  See, e.g., Hernandez v. Commissioner, 490 U.S. 680, 699 (1989); Sherbert v. Verner, 374 U.S. 398, 403 (1963).  The Court substantially limited the scope of these precedents in Employment Div. Dep't of Human Resources of Ore. v. Smith, 494 U.S. 872, 879 (1990), by exempting most "neutral laws of general applicability" from the compelling interest test.  Under current practice, a law ordinarily need not be justified by a compelling

---

[7]  Although Andrew's parents do not press the point, I also reject any claim that the Special Education Law gives Andrew a protectable property interest in obtaining benefits.  The Special Education Law was enacted to implement the IDEA.  As the law's current regulations unequivocally establish, it follows the IDEA in not giving the parents of disabled children in private school an individually enforceable right to obtain services.  See Ed. 1117.03.  Thus, state law does not give either Andrew or his parents a protectable property interest in receiving benefits.

interest if it is "neutral" in that it is not targeted at religiously motivated conduct and "generally applicable" in that it does not selectively burden religious conduct. See Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 532-35, 542-43 (1993).

Andrew's parents accept the District's assertion that the IDEA is a neutral law of general applicability. Nevertheless, they argue that the Act's private school provisions must be justified by a compelling interest because the provisions substantially burden both their constitutional right to freely exercise their religious beliefs and their constitutional right to control Andrew's education. They thus invoke a narrow exception recognized in Smith for "hybrid" claims that join a free exercise claim with another constitutional claim. See Smith, 494 U.S. at 881-82.

The Smith court developed the hybrid claim exception in an effort to explain several past decisions which invalidated on free exercise grounds laws that appeared to be neutral and generally applicable. See id. It has not yet explained, however, how a court should evaluate such claims. Fortunately, the First Circuit has addressed the issue, holding that the

-23-

exception can be invoked only if the plaintiff has joined a free exercise challenge with another independently viable constitutional claim.  See Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 539 (1st Cir. 1995).  Using this test, Andrew's parents have failed to demonstrate that they have a viable hybrid rights claim because, as I have already noted, their substantive due process claim is deficient.[8]  Accordingly, I deny Andrew's parents' free exercise claim.

## V.  RFRA

Having failed to state a viable free exercise claim, Andrew's parents seek to restate their argument as an RFRA claim.

RFRA provides that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability . . . [unless] it

---

[8]  The District of Columbia Circuit follows Brown. Henderson v. Kennedy, 253 F.3d. 12, 19 (D.C. Cir. 2001).  In contrast, the Ninth and Tenth Circuits require only that a plaintiff must make out a "colorable claim" that another constitutional right has been violated.  See Miller v. Reed, 176 F.3d 1202, 1207 (9th Cir. 1999); Swanson v. Guthrie Indep. Sch. Dist. No. 1-4, 135 F.3d 694, 700 (10th Cir. 1998).  This distinction is inconsequential in this case because plaintiffs have failed to make out even a colorable claim that they have been deprived of their right to control Andrew's education.

-24-

demonstrates that application of the burden to the person - (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that government's interest." 42 U.S.C. § 2000bb-1. The Act's stated purpose is "to restore the compelling interest test as set forth in <u>Sherbert v. Verner</u>, 374 U.S. 398 (1693) and <u>Wisconsin v. Yoder,</u> 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b). Although the Supreme Court held in <u>City of Boerne v. Flores</u>, 521 U.S. 507, 536 (1997), that Congress exceeded its power under Section 5 of the Fourteenth Amendment in attempting to apply RFRA to the activities of state and local governments., Congress has since amended RFRA to apply only to "federal law and the implementation of that law," 42 U.S.C. § 2000bb-3 (Supp. 2002). Thus, RFRA remains a potentially viable foundation for a cause of action challenging the implementation of federal law by a state actor acting under color of federal law.

To establish a claim under RFRA, Andrew's parents must demonstrate that their inability to obtain a due process hearing substantially burdens their right to practice their Catholic faith. <u>See</u> 42 U.S.C. 2000bb-1(a). Andrew's parents attempt to

satisfy this requirement by citing their beliefs that their "religious faith obligates [them] to educate [their] children in a religious environment that will assist [them] in teaching [their] children about [their] beliefs and practices" and that "[they] must honor these requirements by sending [their] children to Catholic schools when such schools are available to [them] and [they] are able to do so." While I accept the sincerity of these beliefs, they do not establish that the IDEA's private school provisions substantially burden their ability to practice their Catholic faith. As the First Circuit observed in rejecting a similar claim under the Free Exercise Clause, the Catholic faith does not require parents to educate their children in Catholic schools. See Strout, 178 F.3d at 65. Thus, the Court concluded, a law which denies educational funding for children who attend sectarian schools does not substantially burden a central tenant of the Catholic faith. See id. On this point, the present case is indistinguishable from Strout. Accordingly, I deny Andrew's parents' RFRA claim.

B.   **The Special Education Law**

Andrew's parents contend that they are entitled to a due

process hearing under New Hampshire's Special Education Law. I disagree.

The Special Education Law provides that a parent's right to appeal decisions regarding her child's IEP is "as provided in rules adopted in accordance with RSA 541-A by the State Board of Education." N.H. Rev. Stat. Ann. 186-C:7. When the state hearing officer denied Andrew's parents' request for a due process hearing, the regulations that were then in effect unequivocally required them to pursue their challenge through the state complaint process rather than through a due process hearing. See Ed. 1117.03 (1996).

Andrew's parents first contend that I should disregard the current regulations because they are inconsistent with the Special Education Law. They argue that the law gives Andrew an individually enforceable right to obtain special education services and that their right to a due process hearing necessarily flows from Andrew's right to receive services.

I reject this argument because it is based on the incorrect premise that the Special Education Law gives disabled students in private school an individually enforceable right to receive special education services. While the Law gives disabled

students an entitlement to attend an approved program to implement their IEPs, see N.H. Rev. Stat. Ann. 186-C:9, it does not state whether a local school district satisfies this entitlement by offering special education services to its disabled children in a public school setting. The Department of Education, following the IDEA, has concluded that the Special Education Law does not give disabled children an individually enforceable right to receive services if their parents enroll them in private school. Because the Department's interpretation is plausible, I defer to its interpretation and reject Andrew's parents' claim that the Special Education Law entitles them to a due process hearing. See New Hampshire Retirement System v. Sununu, 126 N.H. 104, 108 (1985); N.H. Dep't of Revenue Admin. v. Public Emp. Labor Relations Bd., 117 N.H. 976, 977-78 (1977).

Andrew's parents next argue that because they made their request for a due process hearing on June 19, 2001, the current regulations which went into effect on July 1, 2001 are inapplicable. They instead claim that the regulations which were in effect when they requested a hearing gave them an entitlement to a hearing. Their argument requires me to determine whether the current regulations should be applied retrospectively to

hearing requests that were pending when the regulations went into effect.

The New Hampshire Supreme Court has summarized its jurisprudence regarding the retrospective application of legislation in In re Wal-Mart Stores, 145 N.H. 635 (2000). There, the court stated:

> [W]hen the legislature is silent as to whether a statute should apply prospectively or retrospectively, as is the case here, our interpretation turns on whether the statute affects the parties substantive or procedural rights. When the rights affected by the statute are substantive, there is a presumption of propsectivity. When the statute is remedial or procedural in nature, however, the presumption is reversed, and the statute is usually deemed to apply retroactively to those pending cases which on the effective date of the statute have not yet gone beyond the procedural stage to which the statute pertains. In the final analysis, however, the question of retrospective application rest[s] on a determination of fundamental fairness, because the underlying purpose of all legislation is to promote justice.

See id. at 638 (internal quotation marks and citations omitted).

What is at stake in this case is Andrew's parents' ability to obtain a due process hearing. Because this is a matter of procedure rather than substance, the regulations are subject to a presumption under New Hampshire law that they should apply to all

cases in which a request for a hearing was pending when the regulations went into effect.  See id.  While the presumption might be overcome by evidence that it would be fundamentally unfair to apply the regulations retrospectively, Andrew's parents have failed to produce any evidence to support such a contention. Accordingly, I reject their claim that the current regulations are inapplicable.

## IV.

For the reasons set forth herein, I grant the District's motion for summary judgment (Doc. No. 11) and deny Andrew's parents' cross motion for summary judgment (Doc. No. 10).

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


January 16, 2003

cc:  Scott Johnson, Esq.
     Dean Eggert, Esq.