# United States Court of Appeals
## For the First Circuit

No. 03-1211

GARY S. AND SYLVIE S., INDIVIDUALLY AND ON BEHALF OF
THEIR SON ANDREW S.,

Plaintiffs, Appellants,

v.

MANCHESTER SCHOOL DISTRICT,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, Chief U.S. District Judge]
[Hon. James R. Muirhead, Magistrate Judge]

Before

Lipez, Circuit Judge,

Campbell and Stahl, Senior Circuit Judges.

Scott F. Johnson with whom Stein, Volinsky & Callaghan, PA was
on brief for appellants.
Dean B. Eggert with whom Jennifer L. Murphy and Wadleigh,
Starr & Peters, PLLC were on brief for appellee.

July 1, 2004

**CAMPBELL**, <u>Senior Circuit Judge</u>. Appealing from an adverse judgment of the district court, the parents of Andrew S., a disabled child who is attending a Catholic elementary school, assert that the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-87, is unconstitutional as applied to their son. While he, like other disabled children who go to private schools, receives some educational services under federal and state law, he is not entitled by law to the panoply of services available to disabled public school students under the rubric of free and appropriate public education (FAPE), nor to the due process hearing provided to public school students alone. Appellants argue that the difference in treatment of their disabled son, who is attending a religious school, from other disabled students, who are attending public schools, violates the Free Exercise Clause of the First Amendment to the federal constitution, the Due Process and Equal Protection clauses of the federal constitution, and the federal Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-1 to -4.

The district court considered these contentions upon cross motions for summary judgment. Rejecting appellants' claims, it granted the appellee Manchester School District's motion for summary judgment and denied summary judgment to appellants. <u>Gary S.</u> v. <u>Manchester Sch. Dist.</u>, 241 F. Supp. 2d 111, 123 (D.N.H. 2003).

On appeal, appellants reiterate their contentions. After carefully considering them, we find ourselves in agreement with the district court. In disposing of this appeal, we are also in substantial accord with much of the reasoning contained in its published Memorandum and Order. Id. at 117-123. We see, therefore, no need to go over yet again all of the groundwork covered there. Nor need we restate the background facts already described in detail in the district court's opinion. Id. at 113-17. We add, however, at some length, our own analysis of several of the key issues.

I.

Appellants' lead argument on appeal is that the district court erred in determining that the federal law did not violate Andrew's and his parents' free exercise rights under the First Amendment. They reject the district court's assertion that the Supreme Court's decision in Employment Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872 (1990), is controlling. Smith, according to the district court, exempted most "neutral laws of general applicability" from the compelling interest test. In the district court's view,

> [A] law ordinarily need not be justified by a compelling interest if it is "neutral" in that it is not targeted at religiously motivated conduct and "generally applicable" in that it does not selectively burden religious conduct. See Church of Lukumi Balalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532-35, 542-43 (1993).

<u>Gary S.</u>, 241 F. Supp. 2d at 120-21.

IDEA and its regulations, the district court says, do not target religiously motivated conduct and is "generally applicable" in that it does not selectively burden religious conduct. For these reasons, and because appellants' First Amendment claim is not "hybrid," <u>i.e.</u> is not linked to a separate constitutional claim, the district court found no violation of free exercise rights. <u>Id.</u> We do not disagree.

Appellants reject the district court's analysis. They ask us to read <u>Smith</u> as limited to instances of socially harmful or criminal conduct. They point out that <u>Smith</u> did not purport to overrule the Supreme Court's holdings in the cases of <u>Hobbie</u> v. <u>Unemployment Appeals Comm'n</u>, 480 U.S. 136 (1987), <u>Thomas</u> v. <u>Review Bd. of the Indian Employment Sec. Div.</u>, 450 U.S. 707 (1981), and <u>Sherbert</u> v. <u>Verner</u>, 374 U.S. 398 (1963). In <u>Hobbie</u> and <u>Sherbert</u>, the complainants were denied unemployment benefits following discharge because of their religiously-based refusal to work on Saturday, complainant's religion's Sabbath. In <u>Thomas</u>, the complainant was denied unemployment benefits after discharge based on his religiously-based refusal to help produce armaments. Holding that the denial of a public benefit in these circumstances burdened plaintiff's religion, the Court ruled that, in order to justify an action having such an effect under the free-exercise clause, the government had to demonstrate that the withholding of

-4-

the benefit served a compelling governmental interest and was the least restrictive means to that end. Hobbie, 480 U.S. at 141-45; Thomas, at 718-20; Sherbert, 374 U.S. at 403. Appellants have likened the denial of educational disability benefits here to those situations, asking us similarly to apply strict scrutiny. If we do, appellants contend, we will find that Andrew's attendance at a Catholic school is mandated by his parents' sincerely-held religious beliefs. No compelling governmental interest is served, they say, by withholding from him the identical benefits granted to his peers at public schools.

It is not always easy to predict what analytical framework the Supreme Court will apply to the various, factually dissimilar free exercise cases that arise. Smith rejected a free exercise claim involving the religiously-based use of peyote, an illegal substance. Writing for five of the Justices, Justice Scalia endorsed the constitutionality of neutral, generally applicable laws even when they impinged incidentally upon individual religious practices. Smith, 494 U.S. at 881, 885. The Smith majority expressly limited Hobbie, Thomas and Sherbert to the unemployment compensation field. Smith, 494 U.S. 883-84. While, as appellants point out, Justice Scalia in Smith also distinguished Hobbie, Thomas and Sherbert on the narrower ground that the use of peyote was illegal, 494 U.S. at 876, the majority's overall message is unmistakably contrary to appellants' present argument that

Hobbie, Thomas and Sherbert -- and, in particular, the "compelling interest" test -- are broadly applicable here.  Smith, insofar as can be told from reading the Court's more recent precedent, remains good law, albeit reflective when written of the thinking of a narrow majority of justices, some of whom no longer serve.  See, e.g., Watchtower Bible and Tract Soc'y of N.Y. v. Vill. of Stratton, 536 U.S. 150, 159 (2002) (discussing in dicta that lower court relied on Smith standard); City of Boerne v. Flores, 521 U.S. 507, 536 (1997) (invalidating statute that sought to "restore the compelling interest test as set forth in Sherbert v. Verner, . . . and Wisconsin v. Yoder," that had been rejected in Smith); Richard C. Schragger, The Role of the Local in the Doctrine and Discourse of Religious Liberty, 117 Harv. L. Rev. 1810, 1853 (2004) (describing the "current Smith-Boerne doctrine"); Notes, "They Drew a Circle That Shut Me In":  The Free Exercise Implications of Zelman v. Simmons-Harris, 117 Harv. L. Rev. 919, 924 (2004) ("Although the Smith rule has been criticized by several Justices - both at the time of the decision and subsequently - the Court has reiterated its commitment to the rule and rebuffed a congressional attempt to change it.") (footnotes omitted); Ming Hsu Chen, Note, Two Wrongs Make a Right: Hybrid Claims of Discrimination, 79 N.Y.U.L. Rev. 685, 710 (2004) ("Notwithstanding any of its flaws, [Smith] remains good law.").

We also agree, for the reasons the district court stated, that this case is not a "hybrid" one. Hence, we conclude that the district court analyzed the case under the correct standard. Gary S., 241 F. Supp. 2d at 121.

While we could perhaps leave the free exercise analysis there, an even more fundamental reason causes us to reject appellants' First Amendment arguments. We cannot accept appellants' contention that providing to all disabled attendees at private schools, both sectarian and secular, fewer benefits than those granted to public school attendees is truly analogous to denying unemployment benefits to persons fired because of their religiously-inspired insistence upon celebrating the Sabbath or not producing weapons.

The state unemployment benefits denied in Hobbie, Thomas, Sherbert were public benefits, available to all. Plaintiffs would have received them had their religiously-motivated refusal to work on a certain day or at a certain job not been erroneously viewed by local authorities as misconduct. While appellants say their son's attendance at a Catholic school is likewise a religiously-motivated act, there is a basic difference. He and they are not being deprived of a generally available public benefit. Rather, the benefits to which appellants lay claim under the First Amendment are benefits the federal government has earmarked solely for students enrolled in the nation's public schools -- benefits still

available for Andrew were he sent to a public school, though not otherwise. Since the early days of public education in this country, public financial aid has commonly been limited to public rather than independent schools. While the parents of private school attendees pay the same taxes as public school parents, the former's tax money normally supports their own children's education only if they transfer them to a public school. To be sure, parents have a protected right to send their children to private schools if they so desire. Pierce v. Soc'y of Sisters, 268 U.S. 510, 534-35 (1925) (state law compelling public school attendance "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control"). But as the very term "private" denotes, it is not ordinarily expected that such schools will be publicly funded, and there is no precedent requiring such funding. Norwood v. Harrison, 413 U.S. 455, 462 (1973) (in affirming "right of private schools to exist and operate . . . [Pierce] said nothing of any supposed right of private or parochial schools to share with public schools in state largesse, on an equal basis or otherwise.").[1]

---

[1]To be sure, the Court has recently permitted a state legislature to provide for attendance at private schools at public expense if it so desires. Cf. Zelman v. Simmons-Harris, 536 U.S. 639, 662-63 (2002) (Ohio pilot school voucher program in which 96% of participating students in Cleveland received publicly-funded tuition aid to attend religious schools did not violate Establishment Clause). But the voucher approach remains so far the exception rather than the rule in our nation as a whole.

Given the traditional pattern that has so far prevailed of financing public education via the public schools, it would be unreasonable and inconsistent to premise a free exercise violation upon Congress's mere failure to provide to disabled children attending private religious schools the identical financial and other benefits it confers upon those attending public schools. Unlike unemployment benefits that are equally available to all, private school parents can have no legitimate expectancy that they or their children's schools will receive the same federal or state financial benefits provided to public schools. Thus, the non-receipt of equal funding and programmatic benefits cannot be said to impose any cognizable "burden" upon the religion of those choosing to attend such schools.[2] Persons opting to attend private schools, religious or otherwise, must accept the disadvantages as well as any benefits offered by those schools. They cannot insist, as a matter of constitutional right, that the disadvantages be

_____

[2]We recognize the disability program provided to Andrew is not one furnished directly by the Catholic school, but is instead run by public authorities for children who attend private school. But we see no distinction in principle. It is, of course, also true that the federal government and state are here actually funding programs for disabled children such as Andrew, the complaint being not the total absence of a program but that Andrew's program and rights are less comprehensive than those accorded to public school students. Again, we see no difference in principle. The federal and state governments are entitled to fund programs associated with private schools if they so desire, provided they do not run afoul of the Establishment Clause. Our point is not that such funding is never allowed, but that it is not commonly expected in our society nor required.

cured by the provision of public funding. It follows that denying the benefits here, to which appellants have no cognizable entitlement, do not burden their free exercise rights.

Indeed, if we were to find a burden here on appellants' right of free exercise, it would follow logically that we should find free exercise violations whenever a state, city or town refuses to fund programs of other types at religious schools, at least insofar as the absence of funding adversely affects students with parents who believe their faith requires attendance at a religious school.[3] Yet, as noted supra, it is clear there is no federal constitutional requirement that private schools be permitted to share with public schools in state largesse on an equal basis. See, e.g., Norwood v. Harrison, 413 U.S. at 462; Harris v. McRae, 448 U.S. 297, 317-18 (1980); Maher v. Roe, 432

---

[3]A further anomaly of such a holding would be that only persons such as appellants, with a declared religious belief in the necessity of sending their children to private schools, would be entitled under the First Amendment to the funding sought. Other students, including those in secular private schools, would lack a right to such funding. Cf. Locke v. Davey, 124 S. Ct. 1307, 1315 (2004) (stating, "Given the historic and substantial state interest at issue, we therefore cannot conclude that the denial of funding for vocational religious instruction alone is inherently constitutionally suspect. Without a presumption of unconstitutionality, [respondent's] claim must fail. The State's interest in not funding the pursuit of devotional degrees is substantial and the exclusion of such funding places a relatively minor burden on [those involved in the funding program]. If any room exists between the two Religion Clauses, it must be here. We need not venture further into this difficult area in order to uphold the [funding program] as currently operated by the State of Washington.").

U.S. 464, 477 (1977); see also Locke, 124 S. Ct. at 1315; Strout v. Albanese, 178 F.3d 57, 66 (1st Cir. 1999) (stating, "fundamental right [to direct child's upbringing and education] does not require the state to directly pay for a sectarian education").

Accordingly, we see no basis for holding that the federal government violates appellants' free exercise rights under the First Amendment by favoring disabled public school attendees in respect to IDEA's programs and benefits. In so doing, the federal government does no more than state and local governments do everyday by funding public school programs while providing lesser or, more likely, no funding to private schools, religious and otherwise. This methodology leaves all parents with ultimate recourse to the public schools whenever the balance of services associated with attendance at a private school appears to them to be unsatisfactory; but the option thus available can necessitate their having to choose, as here, between alternatives each of which may seem imperfect. In any event, we cannot say that the federal government's structuring of benefits here violates appellants' free exercise rights.

II.

Our above-stated conclusion that no cognizable burden on religion has been caused by the federal government's failure to provide to disabled children attending Catholic schools the same benefits as it provides to disabled public school children applies

with equal force to appellants' RFRA claim. 42 U.S.C. § 2000bb-1(a) (stating in part, "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, . . . .").

The district court rejected appellants' RFRA claim, finding no burden upon religion given this court's Strout decision that "the Catholic faith does not require parents to educate their children in Catholic schools." Gary S., 241 F. Supp. 2d at 122 (citing Strout, 178 F.3d at 65). Appellants contend on appeal that it is irrelevant whether the Catholic religion as a whole requires Catholic parents to educate their children at religious schools. They assert that they personally believe, on religious grounds, that such a requirement exists. Their sincere personal belief is enough, they argue, to demonstrate the centrality to their faith of Catholic school attendance. See Hernandez v. Comm'r of Internal Revenue, 490 U.S. 680, 699 (1989) (stating, "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.") (citation omitted).

Assuming, without deciding, that appellants' personal religious belief suffices for RFRA purposes, they still face the insurmountable hurdle we have discussed in the previous section, namely that the mere non-funding of private secular and religious school programs does not "burden" a person's religion or the free

exercise thereof.  42 U.S.C. § 2000bb-1(a).  There is no need to repeat what we have already said on this point.  It suffices to say we find no cognizable "burden" being imposed here upon appellants' exercise of their religion, hence no occasion to apply RFRA.

### III.

Likewise, appellants' equal protection claim fails, as the district court ruled.  Appellants assert that IDEA has infringed upon their fundamental right to direct Andrew's upbringing and education[4] because it deprives him of FAPE and a due process hearing while offering these benefits to students who receive special education services at public school and, therefore, should be subjected to strict scrutiny.  See Pierce, 268 U.S. at 534-35.

To be sure, if a requirement imposed by a state significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.  See, e.g., Cruzan v. Director, Missouri

---

[4]Appellants also argue that the distinctions made here deny their child the right to access an adequate education and a "basic floor of educational opportunity" and therefore should be analyzed under heightened scrutiny.  They concede that the Supreme Court found there is no fundamental right to education, but argue that the Court left open the issue of whether the denial of a "minimally adequate education" would be subjected to heightened scrutiny. See San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1973). As appellants have failed to provide any precedential example of a court's actually having applied this particular mode of heightened scrutiny analysis, we decline to embark upon this path.

Dep't of Health, 497 U.S. 261, 303 (1990). Here, however, just as non-funding of private secular and religious school programs does not "burden" a free exercise of religion, it does not significantly interfere with the appellants' fundamental right to direct the upbringing and education of children under their control. See Pierce, 268 U.S. at 534-35. The Supreme Court has held "in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." Regan v. Taxation with Representation of Washington, 461 U.S. 540, 549 (1983); see also Buckley v. Valeo, 424 U.S. 1, 143-44 (1976) (declining to apply strict scrutiny to statute that provides federal funds for candidates who enter primary campaigns but does not provide funds for candidates who do not run in party primaries); Harris, 448 U.S. at 316-18 (stating, "although government may not place obstacles in the path of a [person's] exercise . . . of freedom of [speech], it need not remove those not of its own creation."); Maher, 432 U.S. at 476-77.

Accordingly, we apply rational basis scrutiny to the IDEA and conclude, as did the district court, that the statutory classification at issue here between public and private school students bears a rational relationship to the furtherance of a legitimate governmental purpose. Regan, 461 U.S. at 547. The Equal Protection clause requires that all persons "similarly

-14-

situated should be treated alike."  Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  A legislature has "substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." Plyler v. Doe, 457 U.S. 202, 216 (1982).  The primary purpose of the IDEA is to guarantee a free and appropriate public education.  See Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 125 (7th Cir. 2003) ("We agree with the reasoning of these courts that IDEA's primary purpose is to ensure FAPE . . . ."); Polera v. Bd. of Educ., 288 F.3d 478, 486 (2d Cir. 2002) (stating, "the [IDEA's] administrative system . . . is designed to ensure that disabled students receive the free appropriate public education to which they are entitled . . . .").  Accordingly, the distinctions made here between students in public school as opposed to children who are unilaterally placed in private schools are rational.  The burden placed on local educational authorities to make FAPE available is heavy.  Congress acted rationally when it chose not to subject local educational authorities to the even greater and perhaps overwhelming responsibility of providing the same services to disabled students enrolled unilaterally in private schools.

IV.

Lastly, we agree with the district court that appellants' substantive due process claim fails.  Appellants argue that the federal law requires them to forego their religious beliefs and their right to control their child's education in order to obtain the same right to FAPE and due process that other students who receive special education services at Manchester receive.  As appellants allege that the government has attempted to condition access to a government benefit on the relinquishment of a constitutional right, the district court correctly analyzed this claim under the framework of the "unconstitutional conditions" doctrine.  The court noted that both the Supreme Court and the First Circuit have "consistently refused to invalidate laws which condition a parent's ability to obtain educational benefits on the parent's relinquishment of her right to send her child to private school."  See Norwood, 413 U.S. at 462 (1973); Strout, 178 F.3d at 66; Harris, 448 U.S. at 318; Maher, 432 U.S. at 477.  Moreover, for the reasons stated above, appellants' claim fails because appellants are not forced to forego their religious beliefs or their right to control their child's education in order to obtain these government benefits.

We **AFFIRM** the decision of the district court.