Rockingham
No. 2005-262

JANET DEBENEDETTO, ADMINISTRATRIX OF THE ESTATE OF DAVID DEBENEDETTO

v.

CLD CONSULTING ENGINEERS, INC.

Argued: March 9, 2006
Opinion Issued: July 27, 2006

*Turgeon & Associates*, of Amesbury, Massachusetts (*Roger D. Turgeon* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Donald L. Smith* on the brief, and *Mr. Dunn* orally), for the defendant.

*Abramson, Brown & Dugan*, of Manchester (*Kenneth C. Brown* and *Jared R. Green* on the brief) and *Borofsky, Amodeo-Vickery & Bandazian, P.A.*, of Manchester (*Stephen E. Borofsky* and *Erica Bodwell*, on the brief) for New Hampshire Trial Lawyers Association, as *amicus curiae*.

DUGGAN, J. The plaintiff, Janet DeBenedetto, appeals an order of the Superior Court (*McHugh*, J.) permitting the jury in a wrongful death case to apportion fault among various entities, including defendant CLD Consulting Engineers, Inc. (CLD). The defendant cross-appeals. We affirm.

The record supports the following facts. On May 31, 1999, the plaintiff's husband, David DeBenedetto, was killed in a two-car automobile collision on Route 28 in Derry. The other driver, Doris Christous, was waiting at a red light to cross Route 28 from a Wal-Mart store. After approximately five minutes passed, Christous apparently concluded that the traffic light was broken and attempted to cross Route 28 while the light was still red. Christous' vehicle struck the rear quarter of the vehicle operated by DeBenedetto, who was passing through the intersection on a green light. The collision caused DeBenedetto's vehicle to roll over, resulting in his death.

Christous had a motor vehicle liability insurance policy, and her insurance carrier paid the $100,000 limit upon demand. Christous was not named as a defendant in the subsequent litigation.

In June 2003, the plaintiff brought a wrongful death action against seven entities: CLD; East Coast Signals, Inc. (ECS); MHF Design Consultants, Inc. (MHF); Yvon Cormier Construction Corp. (Cormier); RayCor Development, Inc. (RayCor); Leo Roy (Roy); and the New Hampshire Department of Transportation (NHDOT). The suit alleged that each named defendant was involved in the design, selection, installation, or authorization of the traffic control system.

Prior to trial, the plaintiff settled her claims against ECS, MHF, Cormier, RayCor, and Roy, and the trial court granted NHDOT's motion to dismiss on grounds of immunity. Thus, CLD was the sole defendant remaining at the time of the trial.

At trial, the plaintiff claimed that when the exit from Wal-Mart was redesigned in 1999 to accommodate through traffic to the newly opened

plaza of shops across the street, a new "loop detector" should have been installed to detect cars in the center lane. A "loop detector" is a piece of equipment installed under the asphalt at an intersection that detects approaching vehicles and signals the computer regulating the traffic control system, producing a green light during the next traffic cycle. The plaintiff alleged that because there was no loop detector to detect cars in the center lane of the Wal-Mart exit, and because CLD knew or should have known that motorists would use the center lane, it was foreseeable that one or more drivers would become stuck at an interminable red light and elect to proceed against it, thereby exposing all motorists lawfully passing through the intersection to an unreasonable risk of injury.

Before trial, CLD requested a jury instruction that included the following language regarding apportionment of fault:

> There are a number of parties in this case, including those that are absent from this trial. It is your duty to determine the proportionate fault of each party. That is, you should decide what percentage of fault lies with each of the alleged tortfeasors, whether they are here or not. You may consider evidence that another party may be responsible for the accident, or any part thereof. In doing so, you may attribute liability to an absent party.

At the conclusion of the trial, the trial court did not give the instruction as requested. Instead, the trial court instructed the jury to determine the percentage of fault, if any, of only the remaining named defendant, CLD, as well as Christous, ECS, and NHDOT. The instruction omitted MHF, Cormier, RayCor and Roy. The jury returned a verdict awarding $5.3 million in damages and apportioned forty-nine percent of fault to CLD, forty-nine percent of fault to Christous, and two percent of fault to NHDOT. Approximately $3 million of the damages awarded were attributable to "non-economic" damages. The jury did not find ECS negligent to any degree.

CLD submitted a post-trial motion for remittitur, requesting that the damage award be reduced to $2.5 million, and that its apportionment of fault be reduced to twenty percent. CLD also submitted motions to set aside the verdict and for judgment notwithstanding the verdict. The trial court denied the latter motions, but partially granted the motion for remittitur, leaving apportionment of fault at forty-nine percent but reducing the damages award to $3.8 million.

The plaintiff also sought post-trial relief, submitting a motion to reform the verdict requesting that 100% of fault be apportioned to CLD. The trial court denied this motion.

On appeal, the plaintiff asserts that: (1) the trial court erred by instructing the jury to consider Christous and NHDOT when assigning fault percentages; (2) the trial court's interpretation of RSA 507:7-e (1997), which governs apportionment of damages, was unconstitutional; and (3) the trial court erred in granting remittitur. CLD cross-appeals, claiming that: (1) the trial court erred by failing to instruct the jury that it could apportion fault to RayCor and Cormier; (2) the jury verdict apportioning no fault to ECS and two percent fault to NHDOT was against the weight of the evidence; and (3) the trial court erred in denying CLD's motion for directed verdict. We address each issue in turn.

## I. Christous and NHDOT

The plaintiff first contends that, in light of the plain language of RSA 507:7-e, I(a), the trial court erred when it instructed the jury to consider apportioning fault to "non-parties" Christous and NHDOT. RSA 507:7-e provides, in relevant part:

> I. In all actions, the court shall:
>
> (a) Instruct the jury to determine, or if there is no jury shall find, the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties; and
>
> (b) Enter judgment against each party liable on the basis of the rules of joint and several liability, except that if any party shall be less than 50 percent at fault, then that party's liability shall be several and not joint and he shall be liable only for the damages attributable to him.

This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *DeLucca v. DeLucca*, 152 N.H. 100, 103 (2005). When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Carlisle v. Frisbie Mem. Hosp.*, 152 N.H. 762, 773 (2005). If a statute is ambiguous, however, we may consider legislative history to aid in our analysis. *Id.* We interpret statutes in the context of the overall statutory scheme and not in isolation. *DeLucca*, 152 N.H. at 103. We review a trial court's interpretation of a statute *de novo. Petition of State of N.H. (State v. Fischer)*, 152 N.H. 205, 211 (2005).

The plaintiff argues that the "plain and ordinary meaning" of the word "party" or "parties," in the context of RSA 507:7-e, I, is "claimant" and

"defendant." The defendant, however, argues that we must construe "party" to include all parties who causally contribute to an accident, "including immune parties and parties who settle prior to suit," in order to effectuate the purpose of RSA 507:7-e. Reading RSA 507:7-e, I(a) in isolation, the phrase "amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties" could be read to favor the plaintiff's interpretation. However, reading RSA 507:7-e as a whole, the word is employed in an arguably broader sense. *See, e.g.*, RSA 507:7-e, I(b)-(c), II; *see also Estate of Hunter v. General Motors Corp.*, 729 So. 2d 1264, 1273 (Miss. 1999) ("If the Legislature had intended to refer to 'parties to a lawsuit' then it could have easily used this language or a similar term such as 'litigant,' but it did not do so."). Because we find that the use of the word "party" throughout RSA 507:7-e creates an ambiguity, we look to the legislative history of the statute to aid in our analysis.

RSA 507:7-e was enacted as part of a comprehensive statutory framework for apportionment of liability and contribution. *Nilsson v. Bierman*, 150 N.H. 393, 395 (2003) (framework includes RSA 507:7-d (1997) through RSA 507:7-i (1997)). The "Act Relative to Tort Reform and Insurance," Laws 1986, 227:2, closely modeled the Uniform Comparative Fault Act, 12 U.L.A. 38-49 (Supp. 1987), in its treatment of comparative fault and apportionment of damages. *Jaswell Drill Corp. v. General Motors Corp.*, 129 N.H. 341, 343-44 (1987). Indeed, when the legislature enacted this framework, "it clearly intended these provisions to function as a unified and comprehensive approach to comparative fault, apportionment of damages, and contribution." *Id.* at 344-45.

As originally enacted in 1986, RSA 507:7-e required that judgment be entered against "each party liable" on the basis of joint and several liability. Laws 1986, 227:2; *see also Jaswell*, 129 N.H. at 344. Under the rule of joint and several liability, a defendant who is only partly responsible for a plaintiff's injuries may be held responsible for the entire amount of recoverable damages. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 10, at 99 (2000). This allows a plaintiff to sue any one of several tortfeasors and collect the full amount of recoverable damages. The burden of joining other potentially liable tortfeasors to share in the apportionment of damages falls upon the defendant. *See id.* comment *b.* at 101-02. Thus, pursuant to joint and several liability, the risk that other nonparty tortfeasors cannot be joined in a suit for reasons of immunity, insolvency, or jurisdiction must also be borne by the defendant. *See id.*

The joint and several liability rule has the ancillary effect of enabling injured plaintiffs to seek out and sue only "deep pocket" defendants—

tortfeasors with significant assets but a potentially low degree of fault who by virtue of joint and several liability may be responsible for the entire amount of recoverable damages. *See, e.g., Alvarez v. New Haven Register, Inc.*, 735 A.2d 306, 312 (Conn. 1999). As a result, numerous jurisdictions have enacted legislation seeking to ameliorate the "inequities" suffered by low fault, "deep pocket" defendants as a result of joint and several liability. *See, e.g., McCoy v. Monroe Park West Associates*, 44 F. Supp. 2d 910, 913 (E.D. Mich. 1999); *Chianese v. Meier*, 774 N.E.2d 722, 724 (N.Y. 2002); *Alvarez*, 735 A.2d at 313-14. Indeed, "[t]he clear trend over the past several decades has been a move away from joint and several liability." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 17 Reporters' Note at 149 (2000). A majority of jurisdictions have adopted, in lieu of joint and several liability, pure several liability, whereby an injured plaintiff may only recover a defendant's comparative-responsibility share of damages, *see id.* § 11, at 108, or a hybrid system that employs both rules. *See id.* § 17 Reporters' Note at 149.

In 1989, the New Hampshire Legislature, recognizing that "manufacturers, professionals and public agencies ... become targets for damage recoveries because of their potential money resources rather than their fault," sought to amend RSA 507:7-e "to treat fairly those entities which may be unfairly treated" under the rule of joint and several liability. N.H.S. JOUR. 286 (1989). The bill, as introduced, would have revised RSA 507:7-e, I(b) to require that judgment be entered *severally* against "each party liable," *see* SENATE BILL No. 110 (1989), thereby providing "that defendants involved in personal injury lawsuit [*sic*] could only be held liable for their percentage of the damages." N.H.S. JOUR. 286 (1989). The legislature rejected this pure several liability approach and instead passed a compromise measure adopting several liability only for those parties "less than 50 percent at fault." *See* RSA 507:7-e, I(b). The resulting legislation made New Hampshire a hybrid jurisdiction.

In *Nilsson*, we considered whether a trial court may, consistent with RSA 507:7-e, instruct a jury to assess the percentage of fault attributable to settling, as well as non-settling, tortfeasors. *Nilsson*, 150 N.H. at 395. The plaintiff argued that the plain and ordinary meaning of the word "party," as employed in the context of RSA 507:7-e, did not include a defendant who settled with the plaintiff before trial. *Id.* at 396. We disagreed, noting first that BLACK'S LAW DICTIONARY defined "party" as "[one] who takes part in a transaction" or "[o]ne by or against whom a lawsuit is brought." *Nilsson*, 150 N.H. at 396 (quotations omitted). We then recognized that other courts "construing similar statutes" defined "party" to encompass "persons involved in an accident, defendants in a lawsuit, or all litigants in a lawsuit." *Id.* Ultimately, we held that, for the

purposes of apportionment pursuant to RSA 507:7-e, I(b), the term "party" refers to "parties to an action, including settling parties," and affirmed the trial court's verdict apportioning ninety-nine percent of fault to the settling defendant and one percent of fault to the non-settling defendant. *Id.* at 394, 396. We expressly declined, however, to reach the issue of whether a tortfeasor who is immune from liability (such as NHDOT) or otherwise not before the court (such as Christous) constitutes a "party" for apportionment purposes under RSA 507:7-e, I(b). *Id.* at 397.

Many jurisdictions permit a jury to consider "nonparties" such as unknown or immune tortfeasors when apportioning fault. 1 COMPARATIVE NEGLIGENCE MANUAL § 14.9, at 14-12 (3d ed., Clark Boardman Callaghan 1995); *see also Nilsson,* 150 N.H. at 396-97. The underlying rationale for such a rule is that true apportionment cannot be achieved unless that apportionment includes all tortfeasors who are causally negligent by either causing or contributing to the occurrence in question, whether or not they are named parties to the case. *See Lasselle v. Special Products Comp.,* 677 P.2d 483, 485 (Idaho 1984); *see also* COMPARATIVE NEGLIGENCE MANUAL, *supra.* "It would be patently unfair in many cases to require a defendant to be 'dragged into court' for the malfeasance of another and to thereupon forbid the defendant from establishing that fault should properly lie elsewhere." *Estate of Hunter,* 729 So. 2d at 1273. "There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss." *Brown v. Keill,* 580 P.2d 867, 874 (Kan. 1978).

Apportionment of fault to nonparties is, moreover, recognized in many jurisdictions as being compatible with the doctrine of comparative fault. *See Carroll v. Whitney,* 29 S.W.3d 14, 21 (Tenn. 2000). "[T]he policy considerations underlying the comparative fault doctrine would best be served by the jury's consideration of the negligence of all participants to a particular incident which gives rise to a lawsuit." *Estate of Hunter,* 729 So. 2d at 1273; *cf. Northland Ins. Co. v. Truckstops Corp. of America,* 914 F. Supp. 216, 220 (N.D. Ill. 1995) (failure to include immune employers in apportionment process violates main purpose of comparative fault by improperly subjecting defendants to liability in excess of their proportion of fault). New Hampshire is a comparative fault jurisdiction. *See* RSA 507:7-d (1997).

The plaintiff contends, however, that the term "parties," as used in the context of RSA 507:7-e, I(a), should be strictly construed to include only "actual parties to the action," *i.e.,* "all plaintiffs, defendants and third-party defendants *actually involved in the case* whose actions have contributed to the loss." We disagree.

As we noted in *Nilsson*, other jurisdictions construing statutes similar to RSA 507:7-e have defined the term "party" to include persons involved in an occurrence giving rise to a plaintiff's injuries. *See Nilsson*, 150 N.H. at 396. For example, Idaho's apportionment statute stipulates that a trial court must, "when requested by any *party* . . . , direct the jury to find . . . the amount of damages and the percentage of negligence or comparative responsibility attributable to each *party* . . . ." IDAHO CODE § 6-802 (2004) (emphases added); *compare* RSA 507:7-e, I(a). The Supreme Court of Idaho has interpreted the statute to encompass "parties to the transaction which resulted in the injury whether or not they are parties to the lawsuit." *Van Brunt v. Stoddard*, 39 P.3d 621, 627 (Idaho 2001) (*citing Pocatello Ind. Park Co. v. Steel West, Inc.*, 621 P.2d 399 (Idaho 1980)). In so doing, the court recognized that "'[i]t is established without doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, . . . whether or not they can be liable to the plaintiff or to the other tortfeasors either by operation of law or because of a prior release.'" *Pocatello Ind. Park Co.*, 621 P.2d at 403 (*quoting Connar v. West Shore Equipment of Milwaukee Inc.*, 227 N.W.2d 660, 662 (Wis. 1975)). Idaho, like New Hampshire, is a comparative negligence jurisdiction. *See* IDAHO CODE § 6-801 (2004).

The Supreme Court of Mississippi, interpreting statutory fault apportionment language similar to New Hampshire's, has also determined that the term "party" is to be applied broadly. Construing MISS. CODE ANN. § 85-5-7(7) (1991), which provided that "[i]n actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault," the court held that the term "party" referred to "any participant to an occurrence which gives rise to a lawsuit, and not merely the parties to a particular lawsuit or trial." *Estate of Hunter*, 729 So. 2d at 1276. Thus, the term "party," in the context of MISS. CODE ANN. § 85-5-7(7), "swept broadly enough to bring in entities which would not or could not have been 'parties to a lawsuit,' thus including immune parties." *Mack Trucks, Inc. v. Tackett*, 841 So. 2d 1107, 1113 (Miss. 2003) (*citing Estate of Hunter*, 729 So. 2d at 1273). The court noted that limiting a jury to a consideration of the fault of the parties at trial would infringe upon a defendant's right to present his or her version of a case to a jury, and recognized that its holding was "based upon sound considerations of judicial fairness." *Estate of Hunter*, 729 So. 2d at 1272, 1275; *see also Mack Trucks, Inc.*, 841 So. 2d at 1113. Mississippi is a comparative negligence jurisdiction. *See* MISS. CODE. ANN. § 11-7-15 (2004).

In Kansas, "[w]here the comparative negligence of the parties in [a civil] action is an issue," the trier of fact must "determin[e] the percentage of

negligence attributable to each of the parties, and determin[e] the total amount of damages sustained by each of the claimants ...." KAN. STAT. ANN. § 60-258a(b) (2005); *compare* RSA 507:7-e, I(a). The Supreme Court of Kansas, tasked with determining whether the percentage of fault of one who cannot formally be joined as a party under the statute could be considered to "arrive at the proportionate liability of [a] defendant," concluded that "the intent and purpose of the legislature in adopting [KAN. STAT. ANN. § 60-258a] was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault." *Brown*, 580 P.2d at 876. The court included in its analysis those parties possessing governmental immunity: "[Although] one of the parties at fault happens to be a ... governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from the ... agency, there is no compelling social policy which requires [a] codefendant to pay more than his fair share of the loss." *Id.* at 874.

The plaintiff asserts that at least four jurisdictions "have interpreted statutes that are similar to ours" and concluded that apportionment of fault among non-litigants is not permitted. The Supreme Court of Connecticut, for instance, has defined "party," for fault apportionment purposes, as active litigants or those litigants who have settled and received releases. *Donner v. Kearse*, 662 A.2d 1269, 1275-76 (Conn. 1995). Thus, if a defendant wishes to "broaden the universe of negligence to be considered," that defendant must implead any allegedly negligent non-party. *Eskin v. Castiglia*, 753 A.2d 927, 933 (Conn. 2000). However, Connecticut's comparative negligence statute, CONN. GEN. STAT. § 52-572h (2005), is far more specific on the topic of fault apportionment than RSA 507:7-e:

> In a negligence action to recover damages resulting from ... wrongful death ..., if the damages are determined to be proximately caused by the negligence of more than one party, *each party against whom recovery is allowed* shall be liable to the claimant only for such party's proportionate share of the recoverable [economic and non-economic] damages.

CONN. GEN. STAT. § 52-572h(c) (emphasis added). Thus, unlike RSA 507:7-e, the plain language of the Connecticut statute expresses a legislative intent to limit the scope of the term "party" for purposes of fault apportionment.

Similarly, the Iowa legislature explicitly defined "party" for purposes of the State's comparative fault and apportionment statutes, thereby limiting fault apportionment to claimants, defendants, third-party defendants, and those persons who have entered into a release, covenant not to sue, or "similar agreement" with the claimant. IOWA CODE. ANN. §§ 668.2, 668.3, 668.7 (1998); *see also Spaur v. Owens-Corning Fiberglas Corp.*, 510 N.W.2d 854, 862 (Iowa 1994) (Iowa comparative fault regime precludes fault sharing unless plaintiff has viable claim against a party).

The plaintiff also cites *Bencivenga v. J.J.A.M.M., Inc.*, 609 A.2d 1299 (N.J. Super. Ct. App. Div. 1992), as support for her position that similar statutes have been interpreted to preclude apportionment among non-litigants. Indeed, *Bencivenga* states that the plain language of N.J. STAT. ANN. §§ 2A:15-5.1 and 2A:15-5.2 makes "the negligence of the person or persons against whom recovery is sought and the negligence of each party or parties to the suit the prerequisites to apportioning fault." *Id.* at 1303 (emphasis omitted); *see also Straley v. United States*, 887 F. Supp. 728, 742 (D.N.J. 1995) (under New Jersey Comparative Negligence Act, assessment of liability limited to those who are party to suit). However, unlike RSA 507:7-e, New Jersey's apportionment statute, N.J. STAT. ANN. § 2A:15-5.2, explicitly requires the trier of fact to find "[t]he percentage of negligence or fault of *each party*" with the "total of all percentages of negligence or fault of all the *parties to a suit*" totaling 100%. N.J. STAT. ANN. § 2A:15-5.2 (2000) (emphases added); *see also Bencivenga*, 609 A.2d at 1303. Similarly, in *Eberly v. A-P Controls, Inc.*, also cited by the plaintiff, the Supreme Court of Ohio construed analogous statutory language requiring a trier of fact to find "[t]he percentage of negligence . . . in relation to one hundred per cent, that is attributable to each party to the action," to reach a similar result. *Eberly v. A-P Controls, Inc.*, 572 N.E. 2d 633, 638 (Ohio 1991). Because the statutes interpreted, respectively, by the New Jersey and Ohio courts expressly limit apportionment to parties to a lawsuit, we find these cases inapposite to the instant dispute.

We find persuasive the reasoning of those jurisdictions with comparative fault schemes and apportionment statutes similar to New Hampshire's that have interpreted the term to include all parties to the transaction or occurrence giving rise to a plaintiff's injuries. We believe that a rule of law limiting a jury or court to consideration of the fault of only the parties to an action would directly undermine the New Hampshire legislature's decision to assign only several liability to those parties who are "less than 50 percent at fault." RSA 507:7-e, I(b).

Finally, we note that the legislature recently rejected a proposed amendment to RSA 507:7-e that would have added a paragraph defining

the terms "party" and "parties" as "only those individuals or entities who are plaintiffs or defendants in the action." Senate Bill 47 (2005); *see also* N.H.S. JOUR. 197 (2005). We hold, therefore, that for apportionment purposes under RSA 507:7-e, the word "party" refers not only to "parties to an action, including . . . settling parties," *Nilsson*, 150 N.H. at 396, but to all parties contributing to the occurrence giving rise to an action, including those immune from liability or otherwise not before the court. We are mindful that at least one jurisdiction does not permit the apportionment of fault to entities enjoying "absolute immunity," and has articulated sound policy reasons for declining to do so. *See Lexington-Fayette Urb. Cty. Gov. v. Smolcic*, 142 S.W.3d 128, 135-36 (Ky. 2004) ("Even though free from financial liability, the possessor [of immunity] still would be subject to process; to the burdens of discovery, including the giving of depositions; and to testifying at trial even if he or she chose not to actively defend his or her actions at trial."). Nonetheless, we believe that fairness precludes a defendant from bearing the entire weight of a damages verdict where, for example, that defendant is ten percent at fault and another party possessing absolute immunity from liability is ninety percent at fault.

We note that a defendant may not easily shift fault under RSA 507:7-e; allegations of a non-litigant tortfeasor's fault must be supported by adequate evidence before a jury or court may consider it for fault apportionment purposes. *See Gust v. Jones*, 162 F.3d 587, 593 (10th Cir. 1998) (interpreting Kansas law); *see also Carroll*, 29 S.W.3d at 21 (jury can apportion fault to nonparty only after it is convinced that defendant has met burden of establishing that nonparty caused or contributed to plaintiff's injury).

On appeal, the plaintiff does not dispute that Christous and NHDOT were at fault. In light of our holding, we conclude that the trial court did not err by instructing the jury to consider the percentage of fault attributable to them.

*II. Constitutionality of RSA 507:7-e*

The plaintiff advances two arguments that RSA 507:7-e, I(a). is unconstitutional. First, she contends that RSA 507:7-e, I(a), as interpreted by the trial court, violates Part I, Article 14 of the New Hampshire Constitution, which provides:

> Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

N.H. CONST. pt. I, art. 14. The purpose of this provision is to make civil remedies readily available, and to guard against arbitrary and discriminatory infringements upon access to courts. *Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 640 (2002).

The plaintiff, citing *Panagoulis v. Company*, 95 N.H. 524 (1949), contends that an "innocent plaintiff" is "entitled to recover his *full damages* from *any negligent person* who was a concurrent and proximate or legal cause of his injuries." (Emphases added.) Thus, she argues that a plaintiff without fault is entitled to recover full damages from any negligent tortfeasor pursuant to the principles of joint and several liability. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 10, at 99. Citing *Carson v. Maurer*, 120 N.H. 925 (1980), the plaintiff further asserts that "[t]his common law right is an important substantive right that is protected by the New Hampshire Constitution." In the plaintiff's analysis, the trial court's interpretation of RSA 507:7-e will have the effect of depriving "innocent plaintiffs ... of the right to seek full compensation from one of two or more negligent persons" without a compensatory *quid pro quo*.

 We find the plaintiff's argument in this regard unpersuasive. First, and foremost, *Carson* does not establish a common law right to recover for one's injuries pursuant to the principles of joint and several liability. *Carson* stands only for the proposition that the "right to recover for personal injuries," though not a fundamental right, is nevertheless an important substantive one. *Carson*, 120 N.H. at 931-32. Furthermore, RSA 507:7-e does not infringe upon the rights of an "innocent plaintiff," or any plaintiff for that matter, to seek and obtain redress in the courts of New Hampshire for personal injuries. Rather, it simply establishes standards for the apportionment of fault among parties once an action has been brought and tried. *See* RSA 507:7-e. That another statute, such as RSA 541-B:19 (1997) (retaining sovereign immunity for State or State actors in various actions, including those arising from the performance of a discretionary function), may limit an injured plaintiff's ability to acquire financial recompense from certain entities is of no consequence in our analysis of RSA 507:7-e. RSA 507:7-e itself does not, by its language, restrict a plaintiff's right to seek a remedy for personal injuries, limit a plaintiff's ability to bring an action against any party, or cap the amount of damages that a plaintiff may seek.

 Part I, Article 14 does not guarantee that all injured persons will receive full compensation for their injuries. *Welzenbach v. Powers*, 139 N.H. 688, 691 (1995). It stipulates only that a plaintiff "is entitled to a certain remedy, by having recourse to the laws, for all injuries he may

receive ...." N.H. CONST. pt. I, art. 14. Because we believe that RSA 507:7-e does not infringe upon this entitlement, we conclude that it does not violate Part I, Article 14 of the New Hampshire Constitution.

The plaintiff's second constitutional challenge is that RSA 507:7-e, as interpreted by the trial court, violates the "Equal Protection Clause," though she neglects to identify any specific provision of the State or Federal Constitutions in support of this challenge. An appellant must fulfill two preconditions before triggering a State constitutional analysis: first, the appellant must raise the State constitutional issue in the trial court; second, the appellant's brief must specifically invoke a provision of the State Constitution. *State v. Dellorfano*, 128 N.H. 628, 632 (1986). In the instant case, the plaintiff did not unambiguously and specifically raise equal protection issues grounded in Part I, Articles 2, 12 or 14 of the State Constitution in her brief. We will not, therefore, undertake a State constitutional analysis of the plaintiff's equal protection argument. *See id.* at 633. However, we have never held that a party's failure to include a citation to a specific provision of the Federal Constitution precludes appellate review. *State v. Burke*, 153 N.H. 361, 363 (2006). Therefore, we address the plaintiff's equal protection claim under the Equal Protection Clause of the Federal Constitution only. *See id.*

The Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). This provision creates no substantive rights; rather, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, federal equal protection analysis applies rational basis scrutiny, under which the classification will stand so long as it bears a rational relation to some legitimate governmental end. *See id.*; *see also Gary S. v. Manchester School Dist.*, 374 F.3d 15, 22 (1st Cir. 2004).

We do not agree that RSA 507:7-e, I(a) creates any such classifications among plaintiffs. RSA 507:7-e, I(a) requires only that a jury or court determine "the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties." Thus, subsection I(a) treats all claimants and defendants equally; an amount of damages must be affixed, and a percentage of fault must be calculated for each tortfeasor. Though the result will inevitably differ from case to case, depending upon the number and availability of claimants and defendants, the standard for determining

damages and apportioning fault is uniform and non-discriminatory. Given our interpretation of RSA 507:7-e, I(a), it is irrelevant that certain claimants, such as the plaintiff in the instant case, may elect not to name a culpable tortfeasor in a suit. Moreover, RSA 507:7-e, I(a) does not make exceptions for defendants made immune by statute or common law. We conclude, therefore, that RSA 507:7-e, I(a) does not treat similarly situated persons differently.

RSA 507:7-e, I(b), however, treats plaintiffs differently depending upon the percentage of fault attributable to each party contributing to the underlying occurrence. For example, if a plaintiff suffers injuries caused by four separate actors, and each is attributed twenty-five percent of the fault, then the plaintiff may only receive twenty-five percent of the damages from any one tortfeasor. If another plaintiff suffers the same injuries, but one of four tortfeasors is at least fifty percent at fault, then the plaintiff may receive 100% of the damage award from that tortfeasor. Therefore, RSA 507:7-e, I(b), by its terms, allows for the disparate treatment of similarly situated persons.

Applying rational basis scrutiny, we conclude that the classification created by RSA 507:7-e, I(b) bears a rational relationship to the furtherance of a legitimate governmental purpose. *Cf. Gary S.*, 374 F.3d at 22. As we noted above, the legislative history of RSA 507:7-e plainly demonstrates that an underlying purpose of the 1989 amendment was to relieve defendants involved in personal injury lawsuits from damages liability exceeding their percentage of actual fault. *See* N.H.S. JOUR. 286 (1989). Specifically, the legislature sought to alleviate the burden imposed by joint and several liability upon "deep pocket" defendants targeted because of their potential financial resources rather than their degree of culpability. *See id.* Rather than adopt pure several liability, however, the legislature reserved the joint and several liability rule for application to tortfeasors fifty percent or more at fault, reflecting an intention to balance the interests of injured plaintiffs with those of defendants bearing relatively low fault percentages.

The problem of "deep pocket" suits is one that jurisdictions throughout the United States have recognized. *See, e.g., Estate of Hunter*, 729 So. 2d at 1273. Many jurisdictions have supplanted the joint and several liability doctrine with pure several liability or a hybrid rule that employs a percentage threshold, much like RSA 507:7-e. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 17 Reporters' Note at 149. Legislatures in a number of such jurisdictions have noted the inequity of "deep pocket" suits as a factor underlying the amendment of their respective states' tort liability regimes. *See, e.g., Smiley v. Corrigan*, 638 N.W.2d 151, 152 n.3 (Mich. Ct. App. 2002) (bill abolishing joint and several

liability in favor of several liability intended as a means of providing fair treatment for defendants, including unjustly burdened "deep pockets"); *Erny v. Estate of Merola,* 792 A.2d 1208, 1219 (N.J. 2002) (amendment limiting joint and several liability to only those tortfeasors found to be more than sixty percent responsible intended to reduce cost of general liability insurance by eliminating "deep pocket" sought by defense attorneys in lawsuits with multiple defendants). We hold, therefore, that the New Hampshire legislature enacted RSA 507:7-e, I(b) in pursuit of a legitimate end.

Furthermore, we believe that the distinction created by RSA 507:7-e, I(b) is rationally related to the object of the legislation. The New Hampshire legislature first enacted a comparative negligence statute in 1969, motivated by "a deep conviction that the contributory negligence rule was so basically unfair and illogical that it should have no further place in [the State's] law." Nixon, *The Actual "Legislative Intent" Behind New Hampshire's Comparative Negligence Statute,* 12 N.H.B.J. 17, 17-18 (1969). By doing away with the doctrine of contributory negligence, the legislature bestowed a considerable benefit upon injured plaintiffs. However, the statute abolished not only contributory negligence, but joint and several liability as well. *See* Laws 1969, 225:1; *see also* Nixon, *supra* ("New Hampshire's comparative negligence statute was ... intended to limit the damages responsibility of each defendant against whom recovery is allowed to his proportionate amount of fault .... [There was a] clearly intended abolition of joint and several liability ...."). Thus, the 1969 comparative negligence statute clearly demonstrates a legislative objective to balance the interests of plaintiffs and defendants.

With the 1986 passage of the "Act Relative to Tort Reform and Insurance," the legislature established a system for contribution among tortfeasors and reinstituted joint and several liability. *See* Laws 1986, 227:2. Three years later, the legislature, concerned with the unfair treatment of certain entities under the revived joint and several liability rule, reenacted RSA 507:7-e, I(b) in its present form. *See* N.H.S. JOUR. 286 (1989).

From the inception of comparative negligence in New Hampshire, the legislature has sought to balance the interests of injured plaintiffs and the interests of defendants. It plainly believed that contribution among tortfeasors did not effectively protect the interests of defendants bearing less than fifty percent of fault for a plaintiff's injuries, and that those defendants were unfairly prejudiced by the comparative negligence regime enacted in 1986. Though the plaintiff argues that the legislature was required to establish certain "procedural safeguards" within RSA 507:7-e, I, we need not hypothesize alternative measures that the

legislature could have taken to better establish the desired balance of interests, as we believe that the introduction of several liability for tortfeasors less than fifty percent at fault was rationally related to that object. *Boulders at Strafford v. Town of Strafford*, 153 N.H. 633, 641 (2006) (least restrictive means analysis not part of rational basis test).

■ In light of our analysis, we conclude that, to the extent it differentiates between two classes of plaintiffs, RSA 507:7-e, I(b) does not violate the equal protection provisions of the Federal Constitution.

*III. Remittitur*

■ Finally, the plaintiff contends that the trial court erred by granting remittitur as to the damages award. Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive if its amount is conclusively against the weight of the evidence and if the verdict is manifestly exorbitant. *Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 838 (2005). The proper standard for the trial court's review of a jury award is whether the verdict is fair. *Id.* Whether remittitur is appropriate rests with the trial court's sound discretion. *Id.* Absent an unsustainable exercise of discretion, we will not reverse the trial court's decision. *Id.*

In reducing the damages award from $5.3 million to $3.8 million, the trial court concluded that "awarding three million dollars for pain and suffering and loss of enjoyment of life [was] excessive," and that "the evidence would support a maximum damage finding for pain and suffering of $500,000, and a maximum damage finding for loss of enjoyment of life of one million dollars." The plaintiff does not contest the trial court's ruling limiting "pain and suffering" damages to $500,000. Rather, the plaintiff asserts that it was impossible to conclude, based upon the evidence, that no reasonable jury could have awarded approximately $2.5 million for "loss of enjoyment of life" damages.

■ The plaintiff argues that the trial court "misconstrued the legal standard for considering remittitur, i.e., whether, considering the evidence in the light most favorable to the plaintiff, *no reasonable jury* could possibly award the amount in question." (Emphasis added.) While we have said that we will not overrule a trial court's discretionary refusal to grant remittitur unless a verdict is "so manifestly exorbitant that *no reasonable person* could conclude that the jury was not influenced by partiality or prejudice, or misled by some mistaken view of the merits of the case," *Bennett v. Lembo*, 145 N.H. 276, 282 (2000) (emphasis added), that is merely an articulation of the unsustainable exercise of discretion standard

that we apply upon appellate review. We have never said that the trial court's initial discretionary review of a jury verdict is confined to a "no reasonable person" standard.

The plaintiff offers various studies and law review articles purporting to "objectively assign a value to the enjoyment of life" consistent with the original jury verdict. These materials were not offered as evidence at trial, and do not influence our review of the trial court's decision to grant remittitur. Having reviewed the record, we conclude that the trial court could reasonably have determined that the jury's damages award was punitive, rather than compensatory, in nature, and therefore both manifestly exorbitant and conclusively against the weight of the evidence. As such, we find no unsustainable exercise of discretion in the trial court's grant of remittitur.

*IV. RayCor and Cormier*

■ CLD, on cross-appeal, argues that the trial court erred when it did not instruct the jury that it could apportion fault to settling defendants RayCor and Cormier. We agree with CLD that a court should instruct a jury to consider settling parties when apportioning fault pursuant to RSA 507:7-e, I(b). *See Nilsson*, 150 N.H. at 394, 396. Prior to trial, CLD submitted a proposed jury instruction concerning apportionment:

> There are a number of parties in this case, including those that are absent from this trial .... [Y]ou should decide what percentage of fault lies with each of the alleged tortfeasors, whether they are here or not. ... [Y]ou may attribute liability to an absent party.

However, in its order on apportionment on fault, the trial court noted:

> CLD agreed that there was not enough evidence produced to show that named but settling defendants Ray Cor Development, Yvon Cormier Construction, MHF Design Consultants and Leo Roy were negligent to any degree and thus CLD did not ask to have the jury apportion their legal fault. CLD wanted the jury to apportion the legal fault of ... Doris Christous, ... East Coast Signals, Inc., and ... the State of New Hampshire, ... as well as CLD itself. The Court adopted CLD's position and the jury was instructed to apportion any legal fault found among these four entities.

Thus, the trial court characterized the final jury instruction as one of CLD's own design. CLD, however, now asserts that it "never agreed" that RayCor and Cormier should be omitted from the jury verdict.

We are bound by a trial court's findings of fact unless they are unsupported by the evidence or erroneous as a matter of law. *See Prof'l Firefighters of N.H. v. HealthTrust*, 151 N.H. 501, 507 (2004); *see also Beaudoin v. Beaudoin*, 118 N.H. 325, 327-28 (1978). The burden of presenting a record sufficient to allow this court to decide an issue presented on appeal falls upon the moving party. *Brown v. Cathay Island, Inc.*, 125 N.H. 112, 115 (1984) (*citing* SUP. CT. R. 13, 15). CLD is unable to point to any evidence in the record that contradicts the trial court's specific finding in its order on apportionment of fault as to CLD's position on the jury instruction regarding apportionment. As such, we cannot disturb the trial court's finding that CLD agreed to the omission of RayCor and Cormier from the trial court's instruction to the jury on apportionment of fault.

We note, moreover, that if CLD believed that the trial court's jury instruction was erroneous, and that the trial court misrepresented its position in the order on apportionment of fault, CLD could have raised the issue in a motion for reconsideration. CLD failed to do so. Because this issue was never presented to the trial court, we cannot review it on appeal. *See N.H. Dep't of Corrections v. Butland*, 147 N.H. 676, 679 (2002).

*V. Apportionment of Fault to ECS and NHDOT*

CLD next argues that the jury verdict, insofar as it apportioned only two percent of the fault to NHDOT and no fault at all to ECS, was against the weight of the evidence. Following the jury verdict, CLD submitted post-trial motions to set aside the verdict, for judgment notwithstanding the verdict, and for remittitur, as well as a memorandum of law in support of those motions. In its memorandum, CLD took the position that the jury's finding that CLD was forty nine percent at fault was "decidedly against the weight of the evidence" and should be set aside. However, CLD did not, in any of its post-trial motions or its memorandum of law, raise for the trial court the issue of the jury's findings as to NHDOT and ECS. Thus, we cannot review it on appeal. *See id.*

*VI. Motion for Directed Verdict*

At the end of the plaintiff's case, CLD moved for a directed verdict on the grounds that the State, as the owner of the intersection, had knowledge of the defect and the dangers it posed. In support of its motion, CLD relied upon *Russell v. Whitcomb*, 100 N.H. 171 (1956), which adopted a rule holding independent contractors to a "general standard of reasonable care for the protection of third parties who may be foreseeably endangered by the contractor's negligence" following an employer's acceptance of the work, but exempting the contractor from liability when

that employer "discovers the danger, or it is obvious to him." *Id.* at 173. In such instances, we said, the responsibility of the employer would supersede that of the contractor. *Id.* The trial court, noting that there was "a question . . . as to what the State knew and when," concluded that the issue was not as "clear-cut" as the defense contended, and as such was appropriate for consideration by the jury. The trial court accordingly denied CLD's motion for a directed verdict. CLD now contends that it was error for the trial court to do so.

A party is entitled to a directed verdict only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. *Carignan v. N.H. Int'l Speedway*, 151 N.H. 409, 413 (2004). Our review of a trial court's denial of a motion for directed verdict is extremely narrow. *Id.* We will uphold a denial of the motion where sufficient evidence in the record supports the ruling. *Id.* Thus, absent an unsustainable exercise of discretion, we will not reverse a trial court's ruling on a motion for directed verdict.

The only evidence offered by CLD in support of its contention is testimony elicited from a NHDOT employee regarding a "trouble call" received by NHDOT on May 3, 1999. According to the employee, he was asked to check the timing at the Wal-Mart exit because "[s]omeone felt there was a problem with it." He further testified that, upon arriving at the scene, he discovered that "[e]verything seemed to be working just fine," that he searched for equipment problems and found none, and that the loops were operating properly. Summing up his visit to the intersection following the "trouble call," the NHDOT employee stated:

> I looked for all the physical problems. I didn't find anything. The intersection was operating. No one was backed up. No one was waiting. Everything seemed to work.

Rather than support CLD's contention that a directed verdict was proper, the proffered testimony tends to seriously undermine it. We conclude that the State's alleged superseding responsibility was plainly a jury issue, and that the record supports the trial court's determination. Therefore, we conclude that the trial court did not unsustainably exercise its discretion by denying the plaintiff's motion for directed verdict.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, J., concurred.