NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2018-0526


JAMES M. VIRGIN

v.

FIREWORKS OF TILTON, LLC & a.

Argued: June 6, 2019
Opinion Issued: August 6, 2019


Hamblett & Kerrigan, P.A., of Nashua (J. Daniel Marr and Andrew J. Piela on the brief, and Mr. Marr orally), for the plaintiff.


Wadleigh, Starr & Peters, PLLC, of Manchester (Joseph G. Mattson and Stephen Zaharias on the brief, and Mr. Zaharias orally), for defendant Fireworks of Tilton, LLC.


Devine, Millimet & Branch, P.A., of Manchester (Jonathan M. Eck on the brief), and Brooke | Stevens, P.C., of Muncie, Indiana (John H. Brooke and John Stevens on the brief, and Mr. Brooke orally), for defendant Foursquare Imports, LLC d/b/a AAH Fireworks, LLC.

LYNN, C.J.  In this interlocutory appeal from the Superior Court (O'Neill, J.), we are asked to determine whether RSA 507:7-e (2010) applies to claims for personal injuries that allege a breach of the implied warranty of merchantability under RSA 382-A:2-314 (2011), thus permitting a named defendant to apportion fault to a non-litigant.  We answer the question in the negative and remand.

The relevant facts recited in the interlocutory appeal statement are as follows.  On March 24, 2016, the plaintiff, James M. Virgin, filed the instant action seeking compensation for personal injuries against the defendants, Fireworks of Tilton, LLC (Fireworks of Tilton) and Foursquare Imports, LLC d/b/a AAH Fireworks, LLC (Foursquare).  As pertinent to this appeal, the complaint alleges breach of the implied warranty of merchantability for damages purportedly sustained as a result of an incident involving fireworks sold by Fireworks of Tilton, and distributed by Foursquare.  On May 10, 2017, Foursquare made a DeBenedetto disclosure pursuant to the case structuring order identifying a Chinese company as the manufacturer of the fireworks that allegedly caused the plaintiff's injuries.  See DeBenedetto v. CLD Consulting Eng'rs, 153 N.H. 793, 803-04 (2006); see also State v. Exxon Mobil Corp., 168 N.H. 211, 259 (2015) ("Pursuant to RSA 507:7-e and DeBenedetto, defendants may ask a jury to shift or apportion fault from themselves to other nonparties in a case.").  The plaintiff moved to strike the disclosure arguing, among other things, that apportionment of fault does not apply to breach of warranty claims.  The trial court denied the motion, but later granted the plaintiff's request to file an interlocutory appeal, which we accepted.  See Sup. Ct. R. 8.

RSA 507:7-e, I, provides:

In all actions, the court shall:

(a) Instruct the jury to determine, or if there is no jury shall find, the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties; and

(b) Enter judgment against each party liable on the basis of the rules of joint and several liability, except that if any party shall be less than 50 percent at fault, then that party's liability shall be several and not joint and he shall be liable only for the damages attributable to him.

(c) RSA 507:7-e, I(b) notwithstanding, in all cases where parties are found to have knowingly pursued or taken active part in a common plan or design resulting in the harm, grant judgment against all such parties on the basis of the rules of joint and several liability.

RSA 507:7-e, I. The defendants argue that the phrase "in all actions" plainly shows that the statute is intended to cover all actions and not just those sounding in tort. The plaintiff posits that, taken as a whole, the statute was intended to cover only tort actions, and argues that this interpretation comports with New Hampshire jurisprudence recognizing the distinction between tort and contract actions.

"Resolving this issue requires us to engage in statutory interpretation, and, therefore, our review is de novo." N.H. Housing Fin. Auth. v. Pinewood Estates Condo. Ass'n, 169 N.H. 378, 382 (2016). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Olson v. Town of Grafton, 168 N.H. 563, 566 (2016). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Zorn v. Demetri, 158 N.H. 437, 438 (2009). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. at 438-39. This construction enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id. at 439.

"RSA 507:7-e was enacted in 1986 as part of the legislature's unified and comprehensive approach to comparative fault, apportionment of damages, and contribution." Ocasio v. Fed. Express Corp., 162 N.H. 436, 442 (2011) (quotation omitted). "The 'Act Relative to Tort Reform and Insurance,' Laws 1986, 227:2, closely modeled the Uniform Comparative Fault Act, 12 U.L.A. 38-49 (Supp. 1987), in its treatment of comparative fault and apportionment of damages." Id. (quotation omitted). "As originally enacted in 1986, RSA 507:7-e required that judgment be entered against 'each party liable' on the basis of joint and several liability." DeBenedetto, 153 N.H. at 798 (quotation omitted). In 1989, the legislature amended the statute by adopting a several liability approach "for those parties less than 50 percent at fault," after rejecting the initial proposal to create a pure several liability scheme that would have provided that defendants in a personal injury action "could only be held liable for their percentage of the damages." Id. at 799 (quotations omitted). In Nilsson v. Bierman, 150 N.H. 393 (2003), we held that for purposes of apportionment under the statute, the term "parties" included settling parties. Id. at 396. In DeBenedetto, we further concluded that the term "parties" included not only settling parties, but extended "to all parties contributing to the occurrence giving rise to an action, including those immune from liability or otherwise not before the court." DeBenedetto, 153 N.H. at 804.

3

Thus, while we have addressed the scope of RSA 507:7-e with regards to named and unnamed parties in a personal injury action, we have not had the occasion to consider the question before us in this appeal: whether the statute extends to breach of warranty actions. Relying on the statute's use of the phrase "in all actions," the defendants contend that the statute clearly extends to contract claims. In the defendants' view, had the legislature desired to limit the statutory scope to tort actions, it would have done so explicitly. The defendants' interpretation, however, reads the statute in isolation and neglects to consider the statutory scheme as a whole. See Zorn, 158 N.H. at 438-39. Indeed, when we have considered the statute in its entirety, we have concluded that it applies only to tort actions.

In Jaswell Drill Corp. v. General Motors Corp., 129 N.H. 341 (1987), we were asked to consider the meaning of the phrase "causes of action," as used in the newly enacted tort reform statute, Laws 1986, 227:2, to determine whether the case would be governed by the statute or the common law. Id. at 343. In that case, the plaintiff sued Jaswell "for negligence, breach of contract, and breach of warranty for damages allegedly arising from the purchase and operation of a Jaswell drilling rig." Id. Jaswell filed a third-party complaint against General Motors Corporation, alleging that any damages sustained by the plaintiff were directly attributable to a defective component part supplied by General Motors. Id. The trial court dismissed Jaswell's third-party claim against General Motors because the "claim was actually an action for contribution," id. (quotation omitted), and the "traditional common-law rule prohibit[ed] contribution, a partial shifting of liability, among joint tortfeasors," Consol. Util. Equipment Serv's, Inc. v. Emhart Mfg. Corp., 123 N.H. 258, 260 (1983). After the trial court's decision, and while the case was pending on appeal, the legislature enacted The Act Relative to Tort Reform and Insurance, which superseded the common law, adopted "the rule of contribution among tortfeasors and allow[ed] apportionment of damages," and applied "'to causes of actions arising on or after July 1, 1986.'" Jaswell Drill Corp., 129 N.H. at 343 (quoting Laws 1986, 227:22). Contrary to Fireworks of Tilton's assertion, the specific question before us in Jaswell Drill Corp. was limited in scope: that is, whether the phrase "causes of action" should be construed as referring to causes of action for contribution or to the underlying causes of action in tort. Id. If "causes of action" included those for contribution, Jaswell's claim could proceed; if not, the trial court's decision was correct. Id. After considering the phrase "in conjunction with section 2 of the Act, codified as RSA 507:7-d to -i," we concluded that it was "clear that 'causes of action' refers to causes of action sounding in tort." Id. at 345. The statute, therefore, did not apply, and Jaswell's claim for contribution was barred by the common law. Id. at 345-46. We noted, however, that there existed the possibility that "Jaswell w[ould] be found liable for breach of warranty . . . although it [wa]s not found negligent." Id. at 347. In that scenario, Jaswell could have been "entitled to indemnity from [General Motors] under the general rule that a seller suffering and paying a judgment against him by an injured person in a warranty action is entitled to

4

indemnity from a manufacturer who sold the product to him with a similar warranty." Id. (quotation omitted). Thus, in the statute's infancy, we interpreted it to apply only to torts.[1] Id. at 345. Given that we defined "causes of action" under the Act to mean those sounding in tort, it would be illogical to now interpret the phrase "all actions," as used in the same statute, to apply to a broader class of cases.

Notwithstanding this history, Fireworks of Tilton argues that we have already expanded the statute to cover "all actions." However, the cases it relies on to support this argument are readily distinguishable. To start, Thibault v. Sears, Roebuck & Co., 118 N.H. 802 (1978), was decided before the statute was amended. See Laws 1986, 227:22 (noting effective date of statute). Second, none of the cases cited dealt with breach of warranty claims; rather, they dealt solely with negligence and strict liability. See Exxon Mobil Corp., 168 N.H. at 220; Trull v. Volkswagen of America, 145 N.H. 259, 260, 262, 264-65 (2000); Thibault, 118 N.H. at 805-06. Warranty actions differ from claims based on strict liability, and, in fact, "the multiple difficulties encountered in obtaining relief under [the Uniform Commercial Code's] warranty provisions gave birth to the remedy of strict liability."[2] Moulton v. Groveton Papers Co., 112 N.H. 50, 54 (1972); see, e.g., Thibault, 118 N.H at 806 (explaining that before the adoption of strict liability, a consumer's only recourse was an action "based either on the negligence of the manufacturer or, additionally or alternatively, on breach of warranty" (quotation omitted)); Elliot v. Lachance, 109 N.H. 481, 484-85 (1969) (recognizing generally the adoption of the remedy of strict liability); Buttrick v. Lessard, 110 N.H. 36, 38 (1969) (noting that a plaintiff may proceed on both an implied warranty claim and one for strict liability).

Third, neither Trull nor Exxon Mobil involved the apportionment of liability only to an entity also in the supply chain. Trull concerned "the scope of liability of a manufacturer to the situations in which the construction or design of its product has caused separate or enhanced injuries in the course of

---

[1] To the extent that Fireworks of Tilton argues that Goudreault v. Kleeman, 158 N.H. 236 (2009), stands for the proposition that RSA 507:7-e applies to all actions — and not just actions in tort — it is mistaken. In that case, we plainly stated that "RSA chapter 507 is a broad framework governing comparative fault and apportionment of tort liability," and that sections 7-d and 7-e establish "a system for contribution among tortfeasors and reinstituted joint and several liability . . . for each party liable." Id. at 253 (quotation omitted) (emphasis added).

[2] We recognize that our case law has, at times, used the term strict liability to include all products liability cases. We note, however, that products liability is the umbrella term for multiple different types of recovery because "[a] products liability claim may be brought under several theories, including strict liability, breach of warranty, and negligence." 63 Am. Jur. 2d Products Liability § 5, at 37 (2010). "The adoption of strict liability [did] not replace the action for breach of implied warranty under the Uniform Commercial Code, since breach of implied warranty and strict tort liability are alternative remedies." Id. § 523, at 504 (footnotes omitted). Put another way, "[s]trict liability and implied warranty are parallel theories of recovery, one in tort and the other in contract, with each theory having its separate elements and procedural conditions for recovery." Id. § 522, at 501.

an initial accident brought about by an independent cause." Trull, 145 N.H. at 261 (quotation omitted). In Trull, the issue before us was whether a "manufacturer should be liable for th[e] portion of the damage or injury caused by [a] defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." Id. at 262 (quotation omitted). In Exxon Mobil, the defendant sought to apportion liability to "several thousand non-litigants, including . . . gasoline suppliers, gasoline importers, foreign refiners, domestic refiners, distributors, trucking companies, and persons with leaking underground storage tanks." Exxon Mobil, 168 N.H. at 256. Although the defendant apparently attempted to apportion liability to some third-party actors downstream from it in the supply chain of its own products, we had no occasion to focus on the propriety of its doing so because the trial court had permitted the apportionment issue to be presented to the jury, which found that no apportionment was warranted. See id. at 257-58. Thus, none of these cases squarely address the issue of whether a defendant who is subject to liability without fault based either on strict liability or breach of warranty theories of recovery may ask the fact finder to apportion liability between entities in the supply chain.

Claims brought under the implied warranty provision of RSA 382-A:2-314 sound in contract and are expressly created by the statute. Sheehan v. Liquor Comm., 126 N.H. 473, 476 (1985). As we have explained, the statutory provisions of the Uniform Commercial Code are designed to provide a complete remedy. Stephan v. Sears Roebuck & Co., 110 N.H. 248, 250 (1970). Although the defendants are correct that we held in Stephan "that contributory negligence is a defense to an action for breach of warranty under RSA 382-A:2-314 in the same manner as in actions based on strict liability," our conclusion was based purely on the language of the Code. Id. at 251 (relying on comments from various Code provisions). For example, we relied on Comment 13 to Section 2-314, which explains that in actions for breach of the implied warranty of merchantability, "an affirmative showing by the seller that the loss resulted from some action or event following his own delivery of the goods can operate as a defense," including establishing that the buyer conducted "an examination of the goods which ought to have indicated the defect" alleged in the action. RSA 382-A:2-314 cmt. 13 (1961); accord RSA 382-A:2-314 cmt. 13 (2011). The same point is made within the other comments upon which we relied. See RSA 382-A:2-316 cmt. 8 (1961) ("Of course if the buyer discovers the defect and uses the goods anyway, or if he unreasonably fails to examine the goods before he uses them, resulting injuries may be found to result from his own action rather than proximately from a breach of warranty."); RSA 382-A:2-715 cmt. 5 (1961) ("Where the injury involved follows the use of goods without discovery of the defect causing the damage, the question of 'proximate' cause turns on whether it was reasonable for the buyer to use the goods without such inspection," and if "it was not reasonable for him to do so, or if he did in fact discover the defect prior to his use, the injury would not proximately result from the breach of warranty."). Whatever parallels we drew to tort law in

<u>Stephan</u>, our reasoning was squarely based on the language of the Code itself. But it does not follow that, based on our decision in <u>Stephan</u>, apportionment under RSA 507:7-e applies with equal force to warranty actions under the Code, and the defendants have pointed to no comparable Code provision supporting such an application.

If we were to accept the defendants' position that <u>DeBenedetto</u> apportionment applies to breach of warranty claims between entities in the supply chain, the practical result would be that, in order to guard against "the empty chair defense," with its resultant apportionment of liability to parties not before the court, an injured plaintiff would be forced to join all potentially liable parties, including remote upstream manufacturers or suppliers, in a single lawsuit to obtain a complete recovery for his or her injuries. Imposing such a requirement would be at odds with one of the primary purposes of implied warranties that are applicable to <u>all</u> sellers of products — to enable a consumer injured by an unmerchantable product to obtain complete relief from whichever merchant in the chain of distribution can most conveniently be brought into court. See 3 David Frisch, <u>Lawrence's Anderson on the Uniform Commercial Code</u> § 2-314:467, at 640 (3d ed. 2013) (noting that "[t]he ability to sue prior sellers does not exonerate, or free from liability, the buyer's immediate seller," and "[e]ven though the buyer may sue the remote manufacturer of the goods, the buyer may still sue its immediate seller, and the fact that the immediate seller may not be entitled to indemnity from the manufacturer does not bar direct suit by the buyer against the seller"); cf. <u>Bylsma v. R.C. Willey</u>, 416 P.3d 595, 601-02 n.10 & 604 (Utah 2017) (rejecting defense of passive immunity for retail seller of defective product because one of the goals of strict liability and breach of warranty doctrines is to "impose[ ] . . . liability on every 'seller' of the product — manufacturers, wholesalers, retailers, and any other party involved in the product's chain of distribution — in order to ensure that a plaintiff will have a meaningful remedy"); id. at 606 ("By holding each seller of a defective product equally and strictly liable, a plaintiff is guaranteed that at least one party — most likely the local retailer — will be known to the plaintiff, amenable to suit, and likely solvent at the time of judgment."); 67A Am. Jur. 2d <u>Sales</u> § 625, at 31 (2003) (noting that the general purpose of implied warranties is "to protect the buyer from loss where" the goods purchased are below commercial standards or are unfit for the buyer's purpose).

We recognize that the legislature's purpose in enacting the 1989 amendment to RSA 507:7-e, which made defendants who are less than 50 percent at fault severally liable only to the extent of their fault, was to discourage injured parties from bringing suit against "deep pocket" defendants whose fault played only a minimal role in causing a plaintiff's injuries. See <u>DeBenedetto</u>, 153 N.H. at 807. We further recognize that our decision today holding that <u>DeBenedetto</u> apportionment does not apply to breach of warranty actions between persons or entities in the supply chain for liability predicated on the same warranty has the potential to encourage the filing of law suits

7

against persons in the supply chain, such as retailers and distributors or other "middlemen," who played little or no role in the creation of the condition that constitutes the breach of warranty, that responsibility most often lying with the manufacturer of the product. But unlike in the fault-based tort context, where liability is predicated upon the culpable conduct of each person responsible for an injury, see Restatement of Torts (Second) § 5, at 9-12 (1965) (discussing the term "subject to liability" for purposes of tort law), the purpose of the implied warranties established under the Uniform Commercial Code is to establish liability on the part of all parties involved in the commercial sale of a defective product that causes injury without regard to fault, and to insure that an injured consumer has the ability to secure compensation for his or her injuries from whichever entity in the chain of distribution can most conveniently be held accountable, see Frisch, supra § 2-314:467, at 640. Because in this case the only absent party to whom the defendants seek to apportion liability is the manufacturer of the fireworks, we have no occasion to consider whether defendants in the supply chain of a product may seek to apportion liability for an injury to some third party outside of the supply chain whose conduct is alleged to have wholly or partially contributed to cause a plaintiff's injuries, or to a third party within the supply chain whose liability is predicated on a basis other than the sale of an unmerchantable product. See Bylsma, 416 P.3d at 611-12.

Our holding does not mean, as Foursquare suggests, that an upstream manufacturer is completely shielded from liability. As we have recognized in the past, "the New Hampshire Legislature removed both horizontal and vertical privity as defenses to implied warranty claims" with the enactment of Section 2-318 of the Uniform Commercial Code. See Dalton v. Stanley Solar & Stove, Inc., 137 N.H. 467, 470 (1993); accord RSA 382-A:2-318 (2011). Applying that principle here, the plaintiff could have sued the allegedly liable Chinese company even though he did not purchase the product directly from it and was therefore not in contractual privity. Moreover, as we explained in Jaswell, a party liable for breach of warranty may later seek indemnification under "the general rule that a seller suffering and paying a judgment against him by an injured person in a warranty action is entitled to indemnity from a manufacturer who sold the product to him with a similar warranty." Jaswell Drill Corp., 129 N.H. at 347 (quotation omitted). Indeed, nothing in the Code displaces this common law principle. See 67A Am. Jur. 2d Sales, supra § 797, at 199 (noting that common law principles supplement the Code unless displaced).[3]

---

[3] We disagree with the defendants' claim that Comment 13 to Section 2-314 applies in this case. Comment 13 speaks only of a seller's defense as it relates to events following delivery. See RSA 382-A:2-314 cmt. 13. The defendants here, however, seek to apportion liability to the upstream manufacturer based on its conduct prior to delivery of the fireworks to Foursquare.

Because we conclude that RSA 507:7-e does not extend to breach of warranty actions under the circumstances presented here, we answer the interlocutory question in the negative and remand to the trial court.

<u>Remanded</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.